**IVY BROADCASTING COMPANY, Inc.,**
**Plaintiff-Appellant,**

v.

**AMERICAN TELEPHONE AND TELE-
GRAPH COMPANY and New York Tel-
ephone Company, Defendants-Appellees-
Appellants.**

No. 305, Docket 29991.

United States Court of Appeals
Second Circuit.

Argued March 6, 1967.

Decided Feb. 13, 1968.

See, also, D.C., 234 F.Supp. 4.

Manley H. Thaler, Ithaca, N. Y. (Thaler & Thaler, Ithaca, N. Y., on the brief), for plaintiff-appellant.

Angela E. Struglia, Syracuse, N. Y. (Costello, Cooney & Fearon and Gerald M. Oscar, New York City, on the brief, George R. Fearon, Syracuse, N. Y., of

counsel), for defendant-appellees-appellants.

Henry Geller, Gen. Counsel, John H. Conlin, Associate Gen. Counsel, and Joseph A. Marino, Counsel, Federal Communications Commission, Washington, D. C., as amicus curiae.

Before LUMBARD, Chief Judge, and WATERMAN and SMITH, Circuit Judges.

LUMBARD, Chief Judge:

■ Plaintiff appeals from the dismissal of its complaint and defendants cross-appeal from the dismissal of their counterclaims by Judge Port in the Northern District of New York. The appeals present the question—apparently one of first impression—whether, in the absence of diversity of citizenship, a federal court has jurisdiction over a claim for negligence and breach of contract in the rendition of interstate telephone service by carriers regulated under the Communications Act of 1934, as amended, 47 U.S.C. §§ 151–609, and over counterclaims for unpaid charges with respect to such service. We conclude that plaintiff's claims arise under federal law within the meaning of 28 U.S. C. § 1331 and, since the amount in controversy exceeds $10,000, we hold that the district court had jurisdiction over the causes of action stated in the complaint. Consequently, the court also had jurisdiction over defendants' counterclaims to the extent that they are compulsory under Rule 13(a) of the Federal Rules of Civil Procedure. Furthermore, we conclude that the counterclaims, so far as they rely upon tariffs required to be filed with the Federal Communications Commission, arise under the Communications Act so as to confer juris-

diction on the district court under 28 U. S.C. § 1337. Accordingly, we reverse the district court's judgment dismissing the complaint and the counterclaims.

Plaintiff, Ivy Broadcasting Company, Inc., a New York corporation, operates six radio broadcasting stations in the State of New York and a radio network serving those and other stations. Defendants—American Telephone and Telegraph Company and its wholly-owned subsidiary, New York Telephone Company, both New York corporations—are communications "common carriers" who are subject to the provisions of the Communications Act and have filed tariffs with the FCC as required by the Act. Plaintiff ordered telephone communications service from defendants in connection with plaintiff's broadcasts of sixteen Syracuse University football games between 1959 and 1962 and of the 1962 New York political conventions.[1]

The complaint alleged grossly negligent and unreasonably delayed installation and testing of special telephone lines for the transmission of these broadcasts and grossly negligent operation of the lines, resulting in noise, interruptions, and transmission of the wrong material. Count 1 of the complaint sought compensatory damages of $78,377.50 and punitive damages of $900,000. Count 2 alleged that defendants had exacted discriminatory charges by billing plaintiff for $10,000 for periods during which the telephone service was impaired. Count 3 averred that defendants contracted and warranted to maintain and operate the lines properly and sought to recover amounts already paid, totalling $10,000, for periods during which defendants allegedly failed to perform this undertaking. There being no diversity

1. The broadcasts of the New York political conventions and eight of the sixteen Syracuse University football games originated in New York, where plaintiff's stations are located. However, plaintiff alleges that its radio stations and those subscribing to its network broadcast in interstate commerce; if so, telephone transmission of the broadcasts originat-

ing in New York is subject to the Communications Act. Ward v. Northern Ohio Tel. Co., 300 F.2d 816 (6 Cir.), cert. denied, 371 U.S. 820, 83 S.Ct. 37, 9 L.Ed. 2d 61 (1962); cf., e.g., Hamilton County Tel. Co. v. Northwestern Bell Tel. Co., 180 Neb. 1, 140 N.W.2d 834 (1966); Pacific Telatronics, Inc., 37 F.C.C. 1163 (1964).

of citizenship, plaintiff asserted that there was federal jurisdiction under 28 U.S.C. § 1337, and under the Communications Act, §§ 152(b), 201–203, 206, 207, 217.

Defendants' answers denied liability and set forth counterclaims for telephone charges allegedly due and unpaid. Defendants moved for summary judgment on the complaint and the counterclaims, and plaintiff cross-moved to add further broadcasts to its complaint and to strike certain defenses.

The district court did not rule on these motions but, on its own motion, dismissed the complaint and the counterclaims for lack of federal jurisdiction. The court reasoned that the claims in count 1 and count 3 of the complaint were actions for negligence and breach of contract which did not arise out of the Communications Act but which were founded on the state law of torts and contracts; therefore neither the Communications Act nor 28 U.S.C. § 1337 gave the court jurisdiction over these claims. Although count 2 alleged discriminatory charges, which ordinarily would be a violation of the Communications Act, the basis of the alleged discrimination was that plaintiff was charged for services which were negligently rendered. Therefore, count 2 was merely a restatement of counts 1 and 3, and did not state a cause of action for discriminatory charges within the meaning of the Act. The court stated that the counterclaims were actions for services rendered, and, since no jurisdictional basis was alleged to support them, they fell with the complaint. Plaintiff appeals and defendants cross-appeal from this judgment.[2]

■ We hold that the court had jurisdiction over the plaintiff's actions for damages resulting from negligence and breach of contract in the rendition of interstate telephone service. The test we have stated for determining whether a complaint presents a federal question is

> whether the complaint is for a remedy expressly granted by an act of Congress or otherwise "inferred" from federal law, or whether a properly pleaded "state created" claim itself presents a "pivotal question of federal law," for example because an act of Congress must be construed or "'federal common law' govern[s] some disputed aspect" of the claim.

McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424, 426 (2 Cir.1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966); see T. B. Harms Co. v. Eliscu, 339 F.2d 823, 826–828 (2 Cir.1964).

■ Clearly the remedy which plaintiff seeks is not one granted by an act of Congress. The Communications Act, §§ 206, 207, provides that a suit may be brought in federal court for damages resulting from a common carrier's violation of specific provisions of the Act, 47 U.S.C. §§ 206, 207, but we agree with the district court's conclusion that the complaint does not show any violation of the Act. In the absence of such specific violations, the Act does not expressly grant a remedy for negligence or breach of contract in the rendition of communications service. Nor do we think that such a remedy should be "inferred" from the Act; there is no reason to believe that Congress, in the Communications Act, intended to declare the existence of the fundamental right to recover for tort or breach of contract. Therefore, 47 U.S.C. § 207 does not confer jurisdiction on the district court.

2. After hearing oral argument on the appeal, we requested additional briefs from the parties and an *amicus* brief from the Federal Communications Commission addressed—in light of Western Union Tel. Co. v. Boegli, 251 U.S. 315, 40 S.Ct. 167, 64 L.Ed. 281 (1920), and Western Union Tel. Co. v. Speight, 254 U.S. 17, 41 S.Ct. 11, 65 L.Ed. 104 (1920)—to the question of whether the actions stated in the complaint and the counterclaims arise under federal law. The brief submitted by the FCC took the position that the actions did arise under federal law so as to confer jurisdiction on the district court.

The question remains whether plaintiff's claims are governed by federal common law and, if so, whether the district court has jurisdiction under 28 U.S. C. § 1331.

■ In the absence of any statutory provision relating to a carrier's liability for negligence or breach of contract, the courts must determine whether these questions should be left to state law or whether the federal interest in the result of such cases is so great that they should be controlled by federal common law. See Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L. Ed. 838 (1943).

■ The fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant all aspects of its performance or nonperformance to be governed by federal law rather than by the state law applicable to similar contracts in businesses not under federal regulation. In McFaddin Express, Inc. v. Adley Corp., supra, which involved contracts for the temporary management and sale of an interstate motor carrier, we held that, while federal statutes require that such contracts be approved by the ICC, the consequences of a breach of those contracts were ruled by state, not federal, law; the statutory framework indicated that the federal interest in the matter was sufficiently served by the ICC's power to grant or withhold authorization of such contracts, and we found nothing to indicate a congressional policy that breaches of such contracts should be ruled by uniform federal principles.

The case before us does not involve, as McFaddin did, a contract relating to the merger of two corporations both of which are engaged in providing regulated services; rather, it involves a contract between the provider and the user of the regulated service. The question then is whether the federal statutory scheme for the regulation of interstate communications service indicates a congressional policy requiring that the duties and liabilities under contracts for the provision of such service be determined according to federal rules in order to assure uniformity of rates and service.

Congress has enacted comprehensive legislation regulating common carriers engaged in interstate telegraph and telephone transmission. Communications carriers were brought under the jurisdiction of the Interstate Commerce Commission by the Act of June 18, 1910, 36 Stat. 539, 544, amending the Interstate Commerce Act. Jurisdiction was transferred to the FCC with the enactment of the Communications Act of 1934, 48 Stat. 1064, as amended, 47 U.S.C. §§ 151–609. One of the stated purposes of the Communications Act was to make available to the people of the United States a rapid, efficient, nationwide communications service with adequate facilities at reasonable prices. § 151. Among other provisions, the Act requires communications carriers to furnish communications service upon reasonable request, § 201, and the FCC has interpreted this to mean a duty to furnish adequate and efficient service. Berkman v. American Tel. & Tel. Co., 8 P & F Radio Reg. 533 (1952). Carriers are required to file tariff schedules with the FCC, § 203, and unreasonable or discriminatory charges, practices, classifications and regulations are prohibited, §§ 201–202. The Act gives the district courts jurisdiction to compel carriers to furnish facilities to any person seeking communications service, § 406, to enjoin violations of the tariff regulations, § 401, and to award damages to persons injured by a carrier's violation of specific provisions of the Act, §§ 206–207.

The Supreme Court has held that the establishment of this broad scheme for the regulation of interstate service by communications carriers indicates an intent on the part of Congress to occupy the field to the exclusion of state law. Since the Communications Act and the 1910 amendment to the Interstate Commerce Act were intended to achieve the same objectives with regard to communications carriers, cases decided prior

to 1934 under the Interstate Commerce Act retain their importance for purposes of determining the scope of the Communications Act of 1934.

In Postal-Tel. Cable Co. v. Warren-Godwin Lumber Co., 251 U.S. 27, 40 S. Ct. 69, 64 L.Ed. 118 (1919), the Supreme Court held that federal law, not state law, governed the validity of a contractual provision limiting the carrier's liability for negligence with respect to unrepeated messages. The Court stated that the Act of June 18, 1910, was designed to subject communications common carriers to a "rule of equality and uniformity of rates," a purpose which would be impaired if "the validity of contracts made by telegraph companies as to their interstate commerce business continued to be subjected to the control of divergent and it may be conflicting local laws," 251 U.S. at 30, 40 S.Ct. at 70, and the Court therefore concluded that Congress had occupied the field to the exclusion of state action, 251 U.S. at 31, 40 S.Ct. 69. Subsequent cases, decided under the Act of June 18, 1910, and under the Communications Act, have firmly established the principle that federal law governs with respect to tariff provisions dealing with the carrier's liability for negligence. E.g., Western Union Tel. Co. v. Nester, 309 U.S. 582, 60 S.Ct. 769, 84 L.Ed. 960 (1940); Western Union Tel. Co. v. Priester, 276 U.S. 252, 48 S.Ct. 234, 72 L.Ed. 555 (1928); Western Union Tel. Co. v. Czizek, 264 U.S. 281, 44 S.Ct. 328, 68 L.Ed. 682 (1924).

In Western Union Tel. Co. v. Boegli, 251 U.S. 315, 40 S.Ct. 167, 64 L.Ed. 281 (1920), the Supreme Court held state law inapplicable to a question concerning the carrier's liability for negligence which was not specifically covered by the tariff provisions. In that case the state court had applied a state statute imposing a penalty for failure to deliver promptly a telegram which had been sent in interstate commerce. The Supreme Court reversed, holding that the state penalty could not be imposed because the provisions of the Act of June 18, 1910,

"so clearly establish the purpose of Congress to subject such companies to a uniform national rule as to cause it to be certain that there was no room thereafter for the exercise by the several states of power to regulate" in this area, 251 U.S. at 316, 40 S.Ct. at 168. And in Western Union Tel. Co. v. Speight, 254 U.S. 17, 41 S.Ct. 11, 65 L.Ed. 104 (1920), the Supreme Court applied federal law to an issue involving a carrier's liability for negligence. The state court had determined that the telegram in question was intrastate and had applied the state rule that there could be recovery for mental suffering resulting from the defendant's negligence. The Supreme Court held that the telegram was sent in interstate commerce and, without discussion of whether state or federal law was applicable, applied the federal rule of Southern Express Co. v. Byers, 240 U.S. 612, 36 S.Ct. 410, 60 L.Ed. 825 (1916), that a suit could not be maintained for mental suffering alone.

■■ These cases lead us to conclude that questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law and that the states are precluded from acting in this area. Where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law.

It seems reasonable that the congressional purpose of uniformity and equality of rates should be taken to imply uniformity and equality of service. The published tariff rate will not be uniform if the service for which a given rate is charged varies from state to state according to differing state requirements. It seems to us that the congressional purpose can be achieved only if a uniform federal law governs as to the standards of service which the carrier must provide and as to the extent of liability for failure to comply with such standards.

Our conclusion that federal law governs in matters concerning the liability of communications carriers with respect to interstate service is in accord with decisions in other circuits. See Kaufman v. Western Union Tel. Co., 224 F.2d 723 (5 Cir.1955), cert. denied, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); O'Brien v. Western Union Tel. Co., 113 F.2d 539 (1 Cir.1940); Vaigneur v. Western Union Tel. Co., 34 F.Supp. 92 (E.D.Tenn.1940); Stanley v. Western Union Tel. Co., 23 F.Supp. 674 (S.D. Fla.1938).

■ Having determined that plaintiff's claims are controlled by federal law, we then reach the question whether a cause of action governed by federal common law arises under the laws of the United States within the meaning of 28 U.S.C. § 1331,[3] thus giving concurrent jurisdiction to the district courts provided the amount in controversy exceeds $10,000. A case may "arise under" federal law, even though the claim is created by state law, if the complaint discloses a need for the interpretation of an act of Congress. Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); see De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). We believe that a cause of action similarly "arises under" federal law if the dispositive issues stated in the complaint require the application of federal common law,[4] a conclusion which we have intimated in prior decisions. See Port Authority Bondholders Protective Committee v. Port of New York Authority, 387 F.2d 259 (2 Cir., Nov. 19, 1967); McFaddin Express, Inc. v. Adley Corp., 2 Cir., 346 F.2d 424, 426–427 (1965), cert. denied, 382 U.S. 1026, 86 S. Ct. 643, 15 L.Ed.2d 539 (1966); cf. T. B. Harms Co. v. Eliscu, 2 Cir., 339 F.2d 823, 828 (1964). The word "laws" in § 1331 should be construed to include laws created by federal judicial decisions as well as by congressional legislation. The rationale of the 1875 grant of federal question jurisdiction—to insure the availability of a forum designed to minimize the danger of hostility toward, and specially suited to the vindication of, federally created rights—is as applicable to judicially created rights as to rights created by statute. See Kurland, The Romero Case and Some Problems of Federal Jurisdiction, 73 Harv.L.Rev. 817 (1960); ALI, Study of the Division of Jurisdiction Between State and Federal Courts (Tentative Draft No. 5, 1967) 77–79; Comment, Federal Common Law and Article III: A Jurisdictional Approach to Erie, 74 Yale L.J. 325 (1964). See also, Stokes v. Adair, 265 F.2d 662 (4 Cir.1959); Mater v. Holley, 200 F.2d 123 (5 Cir.1952) (actions arising under common law in federal enclave cases held to be within the § 1331 grant of jurisdiction).

We do not think that the Supreme Court decision in Romero v. International Term. Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) compels a different result. In Romero the Court held that the grant of jurisdiction under § 1331 did not include cases arising un-

3. 28 U.S.C. § 1331 provides:
   "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

4. Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) does not require a contrary conclusion. In that case, plaintiff asserted that his suit to recover taxes imposed upon the shares of a national bank arose under federal law since the power to lay such a tax had its origin and measure in the provisions of a federal statute. The Supreme Court held that there was no federal jurisdiction, finding not only that the contract had "its genesis" in state law, but also that the basic controversy involved questions of state law and that "the most one can say is that a question of federal law is lurking in the background." This holding does not preclude the conclusion that there is federal jurisdiction where the basic issues stated in the complaint are controlled by federal law.

der maritime decisional law. But that decision was based on the reasoning that the Judiciary Act of 1875 was intended to give the federal courts a new content of jurisdiction and not to reaffirm the jurisdiction over maritime claims which they had possessed since 1789 under the grant of admiralty jurisdiction; therefore, the 1875 grant of federal question jurisdiction did not include claims arising under maritime decisional law. This theory is not applicable to claims founded on federal common law outside the admiralty area, and in fact it can be taken to support the inclusion of such claims within § 1331 since, unlike maritime actions, such claims were not already within the jurisdiction of the federal district courts.

The majority in *Romero* never reached the question of whether the § 1331 grant of jurisdiction includes judicially created rights outside the admiralty area; the four dissenting justices who did reach this question concluded that such rights were included. 358 U.S. at 393, 79 S. Ct. at 491 (opinion of Brennan, J.). In support of his argument that "laws" as used in § 1331 includes decisional as well as statutory law, Mr. Justice Brennan pointed out that "in another context, that of state law, this Court has recognized that the statutory word 'laws' includes court decisions. Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] [1938]." 358 U.S. at 393, 79 S. Ct. at 491. See also Warren v. United States, 340 U.S. 523, 526–527, 71 S.Ct. 432, 95 L.Ed. 503 (1951). While this does not compel the conclusion that "laws" as used in § 1331 should similarly be interpreted to include judicial decisions, it at least lends support to such an interpretation.

Our holding that the district court has jurisdiction under § 1331 of plaintiff's actions in the present case does not imply that federal jurisdiction extends to any case which involves some reference to federal law; that federal law furnishes a necessary ingredient of a claim is insufficient as a basis for federal jurisdiction, unless the claim presents an issue requiring construction of an Act of Congress or unless a distinctive policy of an Act of Congress requires that federal principles control the disposition of the claim. T. B. Harms Co. v. Eliscu, 339 F.2d 823, 825–826, 828 (2 Cir. 1964); McFaddin Express, Inc. v. Adley Corp., 2 Cir., 346 F.2d 424 (1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966).

Since the plaintiff's claim exceeds $10,000 and therefore meets the jurisdictional amount required by § 1331, it is unnecessary to decide whether the district court would also have jurisdiction under § 1337.

Since we find that there is federal jurisdiction over the plaintiff's cause of action, the district court also has jurisdiction over any portions of defendants' counterclaims which are compulsory under Rule 13(a) of the Federal Rules of Civil Procedure. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); Goldstone v. Payne, 94 F.2d 855 (2 Cir. 1938). The pleadings do not make clear what portions of the counterclaims arise out of the same "transaction or occurrence" as the complaint. Therefore, we do not rule upon the specific items in the counterclaims but leave it to the district court to determine, on remand, the extent to which the counterclaims are compulsory. Since the district court may determine that the counterclaims, or some portions thereof, are permissive rather than compulsory, we proceed to consider whether there is an independent basis for federal jurisdiction over the counterclaims.

District courts have jurisdiction of actions "arising under any Act of Congress regulating commerce," 28 U.S.C. § 1337.[5] The Communications Act of

---

5. 28 U.S.C. § 1337 provides:
    "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

1934 is an "Act of Congress regulating commerce" within the meaning of that section. Pugach v. Dollinger, 277 F.2d 739, 741 (2 Cir. 1960), aff'd per curiam, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961). Since we conclude that the counterclaims arise under the Communications Act insofar as they rely upon tariffs which the Act requires to be filed with the FCC,[6] we hold that § 1337 gives the district court jurisdiction over so much of the counterclaims as relies upon such tariffs.

The Supreme Court has held that a railroad's action against a shipper for unpaid interstate freight charges arises under Part I of the Interstate Commerce Act, as amended, 49 U.S.C. §§ 1–27, because

"the Interstate Commerce Act requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment,"

so that "their duty and obligation grow out of and depend upon that act." Louisville & N. R.R. v. Rice, 247 U.S. 201, 202, 38 S.Ct. 429, 62 L.Ed. 1071 (1918). The Communications Act, like the Interstate Commerce Act, prohibits the rendition of services without the filing of a tariff, or for any "greater or less or different compensation" than that specified in the tariff. 47 U.S.C. § 203 (c); 49 U.S.C. § 6(7). Thus the obligation of a user of interstate telephone service to pay for it at the rate fixed by tariff "grow[s] out of and depend[s] upon" the Communications Act in the same way that a shipper's duty to pay for interstate freight service depends upon the Interstate Commerce Act.[7] A complaint seeking to enforce that obligation therefore arises under the Communications Act. This conclusion is strengthened by the fact that any such complaint must establish the applicability and validity of a tariff filed with the FCC, which are federal questions. See Ambassador, Inc. v. United States, 325 U.S. 317, 65 S.Ct. 1151, 89 L.Ed. 1637 (1945).

McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424 (2 Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966), which held that an action for breach of a management contract approved by the Interstate Commerce Commission did not arise under federal law, is inapposite here, because in McFaddin this court found that the Interstate Commerce Commission had not "ordered" the defendant to obey the contract.

Since the district court was incorrect in determining that it lacked jurisdiction over the actions stated in the complaint and over the counterclaims, we reverse the judgment below and remand to the district court for further proceedings, including a consideration of the issues raised by defendants' motions for summary judgment and by plaintiff's cross-motion to strike certain defenses and to amend the complaint.

---

6. Two items in the counterclaim of defendant New York Telephone Company are charges due for intrastate service under tariffs filed with the Public Service Commission of the State of New York; with regard to these items, the claim arises under state law. However, as stated above, the district court would have jurisdiction, despite the absence of a federal question, if this portion of the counterclaim is found to be compulsory.

7. Distinctions can be drawn between the duties imposed by the Communications Act and the Interstate Commerce Act, but they do not, in our opinion, support a different result. The Interstate Commerce Act explicitly subjects a user of services to penalties for inducing unlawful discrimination in his favor, 36 Stat. 549 (1910), as amended, 49 U.S.C. § 10 (3), (4), while the Communications Act contains no such specific provision. Compare 48 Stat. 1100 (1934), as amended, 47 U.S.C. § 501; 48 Stat. 1101 (1934), as amended, 47 U.S.C. § 503(a). But under both acts the carrier's duty to collect the rate set by tariff implies a correlative duty of the user to pay it. Cf. Pittsburgh, C., C. & S. L. Ry. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919).