## MCI TELECOMMUNICATIONS CORPORATION, Appellant,

v.

## GARDEN STATE INVESTMENT CORPORATION, doing business as Adventures in Achievement, Appellee.

### No. 92–2636.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1992.

Decided Dec. 14, 1992.

**386**

Donna M. Roberts, Washington, DC and Carol S. Giuliani, Minneapolis, MN, for appellant.

Counsel who represented the appellee was none.

Before JOHN R. GIBSON, FAGG, and BOWMAN, Circuit Judges.

FAGG, Circuit Judge.

MCI Telecommunications Corporation (MCI), a provider of interstate telecommunications services, filed this lawsuit to recover unpaid telecommunications service charges from Garden State Investment Corporation (Garden State) in federal district court. In its complaint, MCI alleges it provided services to Garden State for two years under the terms and conditions of MCI Federal Communications Commission (FCC) Tariff No. 1, but Garden State failed to pay for MCI's services as the tariff requires. MCI alleges that § 203 of the Communications Act of 1934, 47 U.S.C. § 203 (1988), requires MCI to collect the charges specified in the tariff. MCI seeks to recover for its services based on those charges. MCI alleges its action arises under an act of Congress regulating com-

merce, and thus, federal jurisdiction exists under 28 U.S.C. § 1337(a). The district court dismissed MCI's complaint sua sponte for lack of federal subject matter jurisdiction. *MCI Telecommunications Corp. v. Garden State Inv. Corp.*, 791 F.Supp. 785, 788 (D.Minn.1992). In the district court's view, the face of MCI's complaint did not allege a specific violation of the Communications Act and there is no need for uniform federal common law governing claims to collect unpaid telecommunication service charges. *Id.* at 787. MCI appeals. We reverse and remand.

Congress has enacted legislation regulating common carriers engaged in interstate telephone transmission. Initially, Congress amended the Interstate Commerce Act to bring communications carriers within the Interstate Commerce Commission's jurisdiction. Act of June 18, 1910, ch. 309, sec. 7, § 1, 36 Stat. 539, 544–45. Congress later shifted jurisdiction to the FCC by enacting the Communications Act of 1934, Pub.L. No. 73–416, 48 Stat. 1064 (codified as amended at 47 U.S.C. §§ 151–613 (1988)).

Like the Interstate Commerce Act, 49 U.S.C. §§ 10101–11917 (1988), the Communications Act is a comprehensive act of Congress regulating commerce. *See Springfield Television, Inc. v. City of Springfield*, 428 F.2d 1375, 1378 (8th Cir. 1970). The Communications Act requires carriers to provide telephone service when presented with a reasonable request. 47 U.S.C. § 201(a) (1988). Before engaging in interstate communication, however, carriers must file tariffs containing a charge schedule and any classifications, regulations, or practices affecting charges. *Id.* § 203(a), (c). Carriers must charge reasonable rates, *id.* § 201(b), and can charge only the rates listed in their tariff, *id.* § 203(c)(1). Carriers cannot engage in unreasonable or discriminatory practices. *See id.* §§ 202(a), 203(c). The FCC can assess civil damages against carriers who violate the Act. *Id.* § 206.

The Interstate Commerce Act and the Communications Act contain similar provisions. Like the Communications Act, the Commerce Act prohibits a carrier from pro-

viding services without filing a tariff, 49 U.S.C. § 10761(a) (1988), or from providing services for charges different than the tariff specifies, *id.* § 10741(a). Because the Communications Act had its genesis in the Interstate Commerce Act and the Acts have similar provisions and objectives, we believe two Supreme Court decisions involving federal jurisdiction under the Interstate Commerce Act are highly persuasive in this case.

In *Louisville & Nashville R.R. v. Rice,* 247 U.S. 201, 202, 38 S.Ct. 429, 429, 62 L.Ed. 1071 (1918), the Supreme Court held a railroad carrier's duty to collect and a consignee's obligation to pay freight charges prescribed by a tariff filed under the Interstate Commerce Act "grow out of and depend upon that act." The Supreme Court thus concluded federal jurisdiction existed because the suit arose under a law regulating commerce. *Id.* at 202–03, 38 S.Ct. at 429. In *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) (per curiam), the Supreme Court reaffirmed its holding in *Rice.* The Court in *Thurston* rejected the Ninth Circuit's view that a carrier's action for payment of transportation services was a " 'simple contract-collection action.' " *Id.* at 533, 103 S.Ct. at 1343. The Court stated a carrier's claim for unpaid service charges is necessarily based on the filed tariff rather than an understanding with the shipper. *Id.* at 535, 103 S.Ct. at 1344.

■ Relying on the Supreme Court's decision in *Rice,* the Second Circuit has held that a claim for unpaid telephone service charges arises under the Communications Act to the extent that the claim relies on tariffs filed with the FCC under § 203. *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486, 493–94 (2d Cir.1968). The Second Circuit concluded an interstate telephone user's obligation to pay for the service at the tariff rate " 'grow[s] out of and depend[s] upon' the Communications Act in the same way that a shipper's duty to pay for interstate freight service depends upon the Interstate Commerce Act." *Id.* at 494 (quoting *Louisville,* 247 U.S. at 202, 38 S.Ct. at 429) (footnote omitted). The Second Circuit felt its conclusion was "strengthened by the fact that [in bringing its complaint seeking payment of unpaid charges, the carrier] must establish the applicability and validity of a tariff filed with the FCC, which are federal questions." *Id.* We agree with the Second Circuit.

■ The district court rejected the Second Circuit's decision in *Ivy.* In our view, the district court failed to recognize that a claim arises under federal law when a right created by federal law is an essential element of the plaintiff's action. *Phillips Petroleum Co. v. Texaco Inc.,* 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974) (per curiam) (quoting *Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)). The district court stated MCI's claim brought under an FCC tariff "is simply a contract action seeking to recover payment for services rendered." 791 F.Supp. at 787. The district court's characterization of MCI's claim overlooks the fact that federal tariffs are the law, not mere contracts. *American Tel. & Tel. Co. v. Florida–Tex. Freight, Inc.,* 357 F.Supp. 977, 979 (S.D.Fla.), *aff'd,* 485 F.2d 1390 (5th Cir.1973) (per curiam). Although a user's refusal to pay charges fixed by a tariff will often arise in the context of a broken contract, the carrier's claim for payment is necessarily based on the filed tariff. *Thurston,* 460 U.S. at 535, 103 S.Ct. at 1344. The district court was thus confronted with a proposition of federal law in deciding what, if anything, MCI could recover. *Id.* at 533, 103 S.Ct. at 1343.

Likewise, we believe the district court's reliance on the Communications Act's "savings clause," 47 U.S.C. § 414 (1988), is misplaced. Section 414 preserves causes of action for breaches of duties that are not created under the Communications Act. *Comtronics, Inc. v. Puerto Rico Tel. Co.,* 553 F.2d 701, 708 n. 6 (1st Cir.1977). Here, Garden State's obligation "to pay for [interstate telephone service] at the rate fixed by tariff 'grow[s] out of and depend[s] upon' the Communications Act in the same way that a shipper's duty to pay for inter-

**388**

state freight service depends upon the Interstate Commerce Act." *Ivy*, 391 F.2d at 494 (quoting *Louisville*, 247 U.S. at 202, 38 S.Ct. at 429) (footnote omitted). Indeed, the Supreme Court reached its decisions in *Rice* and *Thurston* notwithstanding the Interstate Commerce Act's savings clause, 49 U.S.C. § 10103 (1988), which is similar to the Communications Act's savings clause.

Because the service relationship between MCI and Garden State arises under the Communications Act and the tariff required by the Act, we conclude the district court had subject matter jurisdiction over MCI's lawsuit under 28 U.S.C. § 1337(a). Thus, the district court did not need to consider whether there is a need for uniform federal common law as a basis for jurisdiction. *See Ivy*, 391 F.2d at 493–94. We reverse and remand for reinstatement of MCI's complaint.