MCI TELECOMMUNICATIONS CORPORATION, Plaintiff–Appellant,

v.

David GRAHAM, individually and d/b/a Graham Construction Company, Defendant–Appellee.

No. 92–6270.

United States Court of Appeals, Sixth Circuit.

Submitted Aug. 9, 1993.

Decided Oct. 8, 1993.

Hillary B. Burchuk (briefed), Washington, DC, James S. McDearman, Grant, Konvalinka & Grubbs, Chattanooga, TN, for plaintiff-appellant.

James S. Dreaden, Wiell & Wiell, Chattanooga, TN, for defendant-appellee.

Before: BOGGS and SILER, Circuit Judges; and JOINER, Senior District Judge.*

BOGGS, Circuit Judge.

This is an appeal from a judgment of the district court dismissing the complaint for lack of subject matter jurisdiction. Because we find that the complaint "arises under" federal law, we reverse.

## I

Appellant MCI provided telecommunication services to the appellee Graham between April 1991 and October 1991 under the terms and conditions of MCI F.C.C. Tariff No. 1 (tariff). This tariff is filed and maintained with the F.C.C. pursuant to 47 U.S.C. § 203. On October 13, 1991, MCI terminated Graham's service because Graham failed to pay his bill. MCI then demanded payment of $18,097.40, plus costs and attorney's fees. When Graham refused to make payment, MCI brought the present suit in federal court. The district court *sua sponte* dismissed the case for lack of subject matter jurisdiction.[1] MCI then brought this timely appeal.

## II

The question of whether a claim "arises under" federal law is determined according to the "well-pleaded complaint" rule. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). Courts must

---

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The district court relied upon the district court opinion in *MCI Telecommunications Corp. v. Gar-* *den State Inv. Corp.,* 791 F.Supp. 785 (D.Minn.). Subsequent to the opinion of the district court in our case, the Eighth Circuit reversed the opinion relied on. 981 F.2d 385 (8th Cir.1992).

determine whether the complaint raises a substantial federal question. This court has stated that this standard is "easily met" and that "an *arguably* plausible claim must be allowed to proceed." *In re Bendectin Litig.,* 857 F.2d 290, 300 (6th Cir.1988) (emphasis in original) (citing *Robbins v. Reagan,* 780 F.2d 37, 43 (D.C.Cir.1985)), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

■ In this case, the appellant satisfied this standard. Tariffs filed with the F.C.C. conclusively and exclusively control the rights and liabilities between a carrier and its customer. Carriers must, *inter alia,* file tariffs with the F.C.C., 47 U.S.C. § 203(a), (c); furnish communication services when presented with a reasonable request, *id.* § 201(a); charge reasonable rates, *id.* § 201(b); and notify the public of any changes in the rate structure, *id.* § 203(b). Violation of any of these provisions is subject to penalty. *Id.* §§ 202(c) and 206. MCI provided service to Graham according to the terms of these federal regulations, and MCI's ability to collect money owed is premised upon complying with these various provisions. *Id.* § 203(c). Thus, MCI's ability to instigate suit is premised upon federal law.

■ The present case is similar to both *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486 (2d Cir.1968) and *MCI Telecommunications Corp. v. Garden State Inv. Corp.,* 981 F.2d 385 (8th Cir.1992). In *MCI,* the telecommunications company brought an action because Garden State had failed to pay its long-distance bill. The district court dismissed *sua sponte* for lack of federal subject matter jurisdiction. However, the Eighth Circuit reversed, holding that the district court "overlook[ed] the fact that federal tariffs are the law, not mere contracts." *Id.* at 387. Thus, a complaint to collect "arises under" federal law. The duty to pay a certain price for phone service is a federal obligation. This result has been reached by other courts that have addressed the issue. *See, e.g., MCI Telecommunications Corp. v. Mosey,* No. 92-CV-542E(H) (W.D.N.Y. Oct. 8, 1992); *MCI Telecommunications Corp. v. Diversified Human Resources Group,* No. CA 3-92-0192-T, 1992 WL 548138 (N.D.Tex. Mar. 14, 1992); *MCI Telecommunications Corp. v. First Am. Capital Resources, Inc.,* 1989 WL 135059, 1989 U.S.Dist. LEXIS 12879 (N.D.Ill. Oct. 30, 1989). *But see MCI Telecommunications Corp. v. Credit Builders of Am., Inc.,* 980 F.2d 1021 (5th Cir.) (concluding that suit to collect unpaid charges did not present federal question), *cert. granted and judgment vacated to consider mootness,* —— U.S. ——, 113 S.Ct. 2925, 124 L.Ed.2d 676 (1993).

MCI's position is further supported by the case law that has interpreted the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq.* Historically, under the Interstate Commerce Act, federal courts have exercised subject matter jurisdiction over suits by interstate carriers seeking to collect freight charges. *Thurston Motor Lines v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (per curiam); *Louisville & Nashville Ry. v. Rice,* 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918). Congress had originally regulated common carriers who were engaged in interstate telephonic communications by amending the Interstate Commerce Act to include communications carriers within the jurisdiction of the Interstate Commerce Commission. Act of June 18, 1910, ch. 309, sec. 7, § 1, 36 Stat. 539, 544–45. Later, Congress transferred that jurisdiction to the Federal Communications Commission when it enacted the Communications Act of 1934, Pub.L. No. 73–416, 48 Stat. 1064 (codified, as amended, at 47 U.S.C. § 151 *et seq.*). Still, the two Acts share a number of similarities. For example, both require that tariffs be filed with the government and be implemented thereafter without any deviations. *Compare* 47 U.S.C. § 203 *with* 49 U.S.C. § 10761. Indeed, both Acts impose numerous obligations on the carriers that they regulate.

■ Like the Interstate Commerce Act, the Communications Act is comprehensive legislation. *United States v. Southwestern Cable Co.,* 392 U.S. 157, 167, 88 S.Ct. 1994, 2000, 20 L.Ed.2d 1001 (1968). Additionally, the same kinds of uniformity concerns that give rise to federal subject matter jurisdiction under the Interstate Commerce Act also underlie the Communications Act. 47 U.S.C. § 151; *see also* John R. Haring and Kathleen B. Levitz, *The Law and Economics of Feder-*

*alism in Telecommunications,* 41 Fed. Comm.L.J. 261 (1989) (demonstrating the importance of uniformity in interstate common carrier matters). Based upon the legislative history that underlies the Communications Act of 1934, and because of that Act's continuing similarities with the Interstate Commerce Act from which it springs, it would be incongruous to impose a different jurisdictional rule under the Communications Act than under the Commerce Act. Ultimately, a user's obligation to make payments for interstate telephone service at the rate fixed by tariff " '[grows] out of and [depends] upon' the Communications Act in the same way that a shipper's duty to pay for interstate freight service depends upon the Interstate Commerce Act." *Ivy Broadcasting Co.,* 391 F.2d at 494 (quoting *Louisville & Nashville,* 247 U.S. at 202, 38 S.Ct. at 429).

For these reasons, the district court's judgment is REVERSED.