Richard MELLMAN, Plaintiff,

v.

SPRINT COMMUNICATIONS COMPANY, a limited partnership, Defendant.

No. 1:96–cv–119–MMP.

United States District Court, N.D. Florida, Gainesville Division.

Aug. 30, 1996.

Richard Mellman, Gainsville, FL, pro se.

Robert J. Stein, Clinton Krislov, Krislov & Associates, Ltd., Chicago, IL, for Plaintiff.

Toby S. Monaco, Monaco, Monaco & Birder, Gainsville, FL, Scott M. Brinkman, Brant M. Laue, Kirk T. May, Brinkman Laue & May, Kansas City, MO, for Defendant.

## ORDER

PAUL, Chief Judge.

This cause comes before the Court on Plaintiff's motion to remand (Doc. 14). Defendant has filed a response in opposition to Plaintiff's motion (Doc. 17). For the reasons outlined below, Plaintiff's motion is DENIED.

## BACKGROUND:

Plaintiff is suing Defendant under a breach of contract theory for certain changes made by Defendant in its "Fridays Free" long distance program. According to the complaint, on or about April 5, 1996, Defendant "telephonically solicited Plaintiff to change his long distance carrier to Defendants [sic] Company." Defendant's representative allegedly promised Plaintiff that if he switched his business telephone carrier to Sprint, Defendant would provide Plaintiff with free long distance service to China on Fridays for a period of one year, up to a maximum of $1000.00 in free calls each month. Compl. at ¶ 4. Plaintiff claims that as a direct result of these assurances, he changed his business telephone carrier to Sprint. Some time after Plaintiff made the change, Defendant removed China from the list of countries available through its "Fridays Free" program.[1]

---

1. Defendant contends that this change "was necessitated by an unanticipated explosion in international calling services and threatened its ability to provide timely domestic service." Doc. 17 at 1–2.

Plaintiff now seeks monetary damages and other relief for the value of the loss of the free calls to China.

Plaintiff originally filed his two count complaint[2] in the Eighth Judicial Circuit, in and for Alachua County. Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441, alleging a federal question, and gave timely notice to Plaintiff pursuant to 28 U.S.C. § 1446 (Doc. 1). Venue is proper in the Northern District of Florida, Gainesville Division, because Plaintiff alleges the cause of action accrued in Alachua County, Florida.

## DISCUSSION:

### I. Plaintiff's Motion to Remand:

■ "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996) (citing 28 U.S.C. § 1441(a)). On a motion to remand, the removing defendant bears the burden of proving the existence of federal jurisdiction. *E.g., Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996); *Tapscott*, 77 F.3d at 1356.

■ In the notice of removal, Defendant asserted that this Court has federal question jurisdiction over Plaintiff's state law claims. According to Defendant, Plaintiff's claims are governed by Defendant's FCC tariffs and the Federal Communications Act of 1934, Pub.L. No. 73–416, 48 Stat. 1064 (codified as amended at 47 U.S.C. §§ 151–613 (1994)) ("FCA"), which preempts the types of state law claims asserted here. Defendant maintains that Plaintiff has tried to avoid federal jurisdiction by artfully pleading what are essentially federal claims as state law claims. Consequently, Defendant argues that removal is proper. *See* Docs. 1 & 17.

On the other hand, Plaintiff contends that there is no basis for federal jurisdiction: "It is the position of the Plaintiff that the damages suffered herein were under a contract and do not relate to the FCA. New tariffs offered by the Defendant under the act should not be allowed to change contracts already in affect [sic] between the parties." Doc. 14 at 3. Plaintiff argues that he did not engage in artful pleading to avoid federal jurisdiction, and "in the simplest way possible ... had never even heard of the FCA prior to defendant's notice of removal." *Id.* As a result, Plaintiff concludes that both federal question and diversity jurisdiction[3] are lacking, mandating remand of his cause to state court.

■ Defendant has the better of the arguments. The Supreme Court has stated in a similar context that courts "will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum ... [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization."[4] *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981) (quoting 14A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3722, pp. 564–66 (1976)). *Cf. Universal Communications Corp. v. Burns*, 449 F.2d 691, 692 (5th Cir. 1971) (per curiam)[5] ("The District Court was correct in declining to remand this case to the state court ... The complex regulatory scheme of federal labor law may not be avoided by merely artful pleading of a state cause of action."). Federal jurisdiction may still exist "if a well-pleaded complaint established that [the] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Sheppard*, 85 F.3d at 1505 (quoting

---

**2.** Both counts sound in breach of contract, and are essentially duplicative of one another. Plaintiff might possibly be pursuing alternative claims for breach of an oral and of a written contract; however, the complaint is not clear on this point.

**3.** While there is apparently complete diversity of citizenship, Plaintiff is seeking damages well below the minimum amount in controversy.

**4.** In making this determination, it is irrelevant that Plaintiff did not intentionally try to deceive the Court as to the true nature of his claims.

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983)). An examination of Plaintiff's state claims reveals that those claims are either preempted by the FCA, or necessarily implicate the FCA, thereby raising a federal question upon which removal may be grounded.

█ The FCA has been described as "a comprehensive scheme for the regulation of interstate communications." *Benanti v. United States*, 355 U.S. 96, 104, 78 S.Ct. 155, 159, 2 L.Ed.2d 126 (1957). Under this scheme, long distance carriers such as Defendant must file with the Federal Communications Commission ("FCC") schedules of charges known as "tariffs," changes to the tariffs, and any other regulations or policies which impact charges. 47 U.S.C. § 203. Customers can only be charged the rates specified in the tariff then in effect. *Id.* at § 203(c)(1). Other provisions prevent carriers from discriminating or giving preferences in its charges and services, *id.* at § 202(a), and charging unreasonable rates, *id.* at § 201(b). The FCC is given broad authority to enforce the FCA. *Id.* at § 206. In addition, consumers claiming to have been damaged by any carrier subject to the FCA may either file a complaint with the FCC, or file a civil action "in any district court of the United States of competent jurisdiction." *Id.* at § 207. These provisions, as well as cases interpreting them, have shown that "federal law completely occupies the field of interstate communications, thereby preempting state law." *MCI Telecommunications v. O'Brien Marketing, Inc.*, 913 F.Supp. 1536, 1540 (S.D.Fla.1995). *Accord, Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486, 491 (2d Cir.1968); *Harrison Higgins, Inc. v. AT & T Communications, Inc.*, 697 F.Supp. 220, 222 (E.D.Va.1988).

Nevertheless, there has been a split of authority among courts as to whether a state law breach of contract action arising from telecommunications services is necessarily preempted by or otherwise subject to the FCA.

A few courts have found that such a state law claim does not implicate the FCA. For example, in *Financial Planning Institute, Inc. v. American Telephone and Telegraph Company*, 788 F.Supp. 75 (D.Mass.1992), the court relied upon the "savings clause" contained in the FCA,[6] to hold that a customer's state claims for breach of contract and unfair trade practices arising from overcharges for "800" interstate telephone service, were not preempted by the FCA. *Id.* at 77. As a result, the court found that the FCA did not provide a basis for removal. *Id.* Similarly, in *American Inmate Phone Systems, Inc. v. U.S. Sprint Communications Company, Ltd.*, 787 F.Supp. 852 (N.D.Ill.1992), the court reached the same conclusion. *See id.* at 855–59. Finally, the Fifth Circuit has held that a contract action to collect unpaid charges for telecommunications services is not subject to the FCA, and therefore does not present a federal question. *See MCI Telecommunications Corp. v. Credit Builders of Am., Inc.*, 980 F.2d 1021 (5th Cir.), *vacated*, 508 U.S. 957, 113 S.Ct. 2925, 124 L.Ed.2d 676, *prior opinion reinstated*, 2 F.3d 103 (5th. Cir.), *cert. denied*, 510 U.S. 978, 114 S.Ct. 472, 126 L.Ed.2d 424 (1993).

Conversely, a number of courts have concluded that breach of contract claims arising from telecommunications charges are necessarily intertwined with the FCA. *Ivy*, 391 F.2d at 486, is the leading case for this line of reasoning. In *Ivy*, a user of interstate telephone service sued two telephone companies for negligence and breach of contract for their operation of interstate phone service. The Second Circuit held that the user stated a federal cause of action, reasoning that "questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law." *Id.* at 491. The *Ivy* court further reasoned that "[w]here neither the Communications Act itself not the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law." *Id.* The

---

**6.** The savings clause states: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.

court went on to find that the general federal question statute, 28 U.S.C. § 1331, provided a jurisdictional basis for claims brought under federal common law. *Id.* at 492–93.

Several courts have relied upon *Ivy* to find that breach of contract claims related to telecommunications services were precluded by the FCA. *See, e.g., International Magazine Serv. of Atlanta v. Allnet Comms. Servs., Inc.,* 220 Ga.App. 160, 469 S.E.2d 305, 306 (1996); *MCI Telecommunications Corp. v. Graphnet, Inc.,* 881 F.Supp. 126, 131–32 (D.N.J.1995); *Harrison Higgins,* 697 F.Supp. at 222–23. *See also MCI Telecommunications Corporation v. Garden State Investment Corporation,* 981 F.2d 385 (8th Cir.1992) (telecommunication provider's suit for non-payment of amounts specified in provider's FCC tariff arose under FCA); *Nordlicht v. New York Tel. Co.,* 799 F.2d 859, 862 (2d Cir.1986) (denying motion to remand to state court an action by a customer challenging telephone carrier's billing practices, holding that FCA preempted claims and claims necessarily arose under federal common law), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987). *See generally MCI Telecommunications Corp. v. Graham,* 7 F.3d 477, 479 (6th Cir.1993) ("The duty to pay a certain price for phone service is a federal obligation.").

Such conclusions are not only consistent with *Ivy,* but also Supreme Court interpretations of the liabilities imposed upon parties challenging rates included in tariffs regulated by the Interstate Commerce Act, 49 U.S.C. § 10741.[7] For example, in *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (per curiam), the Court held that a carrier's contract claim against a shipper for motor freight charges was necessarily based upon the carrier's tariff filed with the Interstate Commerce Commission, notwithstanding the

parties' contrary understanding. *Id.* at 534–35, 103 S.Ct. at 1343–44. The Court noted that "the parties are held to the responsibilities imposed by the federal law, *to the exclusion of all other rules of obligation."* *Id.* at 535, 103 S.Ct. at 1344 (quoting *Louisville & Nashville R. Co. v. Rice,* 247 U.S. 201, 203, 38 S.Ct. 429, 429, 62 L.Ed. 1071 (1918)) (emphasis added) Consequently, it appears that the *Ivy* line of authority is controlling.

This conclusion is further buttressed by recent criticism of the decisions which have found that the FCA is not implicated by breach of contract claims arising from the provision of telecommunications services. For example, in *MCI Telecommunications Corporation v. Garden State Investment Corporation,* 981 F.2d at 385, the Eighth Circuit repudiated the lower court's misconstruction of a claim related to an FCC tariff as a state law breach of contract claim.[8] *Id.* at 387. In addition, the Eighth Circuit rejected the lower court's reliance on the "savings clause." *See id.* at 387–88. Similarly, this Circuit has declined to follow the reasoning set forth by the Fifth Circuit in the *Credit Builders* decision, holding that it overlooked controlling Supreme Court case law. *See Western Union Int'l Inc. v. Data Dev., Inc.,* 41 F.3d 1494, 1496 n. 3 (11th Cir.1995).[9]

In the case at bar, Plaintiff is challenging a rate change that Defendant made to its tariff and duly submitted to the FCC. The Eleventh Circuit has held that "a tariff, required by law to be filed, constitutes the law and is not merely a contract." *Data Dev.,* 41 F.3d at 1496 (quoting *AT & T v. Florida–Texas Freight, Inc.,* 357 F.Supp. 977, 979 (S.D.Fla.), *aff'd,* 485 F.2d 1390 (5th Cir.1973)). It is inconsequential that Plaintiff did not intend to bring a breach of contract claim under Defendant's tariff, but instead sought relief

---

**7.** The Supreme Court has recognized that the Interstate Commerce Act has served as a model for the FCA. *E.g., MCI Telecommunications v. American Tel. & Tel.,* 512 U.S. 218, 229–31, 114 S.Ct. 2223, 2231, 129 L.Ed.2d 182 (1994).

**8.** The lower court had relied upon the reasoning of *American Inmate,* discussed above, to reach its conclusion. *See MCI Telecommunications Corp.*

*v. Garden State Investment Corp.,* 791 F.Supp. 785, 788 (D.Minn.1992), *rev'd,* 981 F.2d at 385.

**9.** In fact, a district court in the Fifth Circuit has also declined to follow *Credit Builders,* instead relying upon a decision of the former Fifth Circuit. *See MCI Telecommunications Corp. v. United Showcase, Inc.,* 847 F.Supp. 510, 514 (N.D.Tex.1994).

under a separate contract.[10] It is clear that regardless of how Plaintiff has fashioned his claims, he is seeking relief which will directly implicate the Defendant's tariff, as well as certain provisions of the FCA. Under the authority of *Ivy,* such claims are "governed solely by federal law." 391 F.2d at 491. This Court therefore has federal question jurisdiction over this matter under either 47 U.S.C. § 207, or federal common law as it relates to the FCA.

Accordingly, Plaintiff's motion to remand (Doc. 14) must be, and is, DENIED.

## II.  Question of Primary Jurisdiction:

Defendant indicated in its notice of removal that it expected to file a motion to dismiss, or alternatively, for a stay and referral of this matter to the FCC. Defendant states that such action is appropriate under the doctrine of primary jurisdiction. *See* Doc. 1 at 3 n. 1. In addition, Defendant has also raised the "filed rate" or "filed tariff" doctrine as a defense to this action.[11]

If Defendant intends to formally invoke the doctrine of primary jurisdiction or the filed rate doctrine, it should do so by filing either a motion to stay or a motion to dismiss. Since early resolution of this issue would be beneficial to both the Court and the parties, any such motion shall be filed within twenty-one (21) days of this order. Plaintiff will then be given an opportunity to file a response before the Court issues a ruling.

## III.  Compliance with Local Rules:

One additional matter must be briefly discussed. Both parties have made certain filings in this cause which have not been in compliance with Local Rule 5.1(A)(3). That Rule states, in relevant part: "The first page of every pleading or document filed with the court shall, however, allow approximately a two (2) inch margin at the bottom of the page where the clerk shall date stamp such pleading or document filed." N.D.Fla.Loc.R. 5.1(A)(3). From now on, all filings shall be made in accordance with this rule. The attorneys may want to contact the clerk of court to obtain copies of the Local Rules.

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED:**

1.  Plaintiff's motion to remand (Doc. 14) is DENIED.

2.  Defendant has twenty-one (21) days from the date of this order within which to file a motion to dismiss or to stay based upon either the doctrine of primary jurisdiction or the filed rate doctrine. Plaintiff shall then have fourteen (14) days from the date of service of the motion in which to file and serve a responsive memorandum. *See* N.D.Fla.Loc.R. 7.1(C)(1).

---

**10.**  Plaintiff seems to allege that this contract arose from certain statements made by Defendant's representative, and Plaintiff's decision to enroll in Defendant's "Fridays Free" program based upon those statements. *See* Compl. at ¶ 4.

**11.**  The filed rate doctrine has been accepted in this Circuit, and recognizes that "where a legislature has established a scheme for utility rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme." *Taffet v. Southern Co.,* 967 F.2d 1483, 1490 (11th Cir.), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992). *See also Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 582, 101 S.Ct. 2925, 2933, 69 L.Ed.2d 856 (1981) ("under the filed rate doctrine, when there is a conflict between the filed rate and the contract rate, the filed rate controls"). Moreover, the filed rate

doctrine only allows the FCC to evaluate whether a charged rate is reasonable, "and until it has done so, no rate other than the one on file may be charged." *Id.* at 581, 101 S.Ct. at 2932 (discussing the rate-making authority of the Federal Energy Regulatory Commission). *See also American Tel. & Tel. Co. v. IMR Capital Corp.,* 888 F.Supp. 221, 254–55 (D.Mass.1995) (same holding applies to FCC's authority) (collecting citations).

Where the crux of a dispute between a telephone company and a customer concerns the reasonableness of charging a filed rate, at least one court has applied the doctrine of primary jurisdiction to defer to the judgment of the FCC. *See Southwestern Bell Tel. Co. v. Allnet Communications Serv., Inc.,* 789 F.Supp. 302 (E.D.Mo. 1992).