SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY v. SHARP & WHITE.

Opinion delivered May 17, 1915.

1. TELEPHONE COMPANIES—NATURE OF BUSINESS—REASONABLE REGULATIONS—RATES.—Telephone companies are public service corporations and take and hold their charters subject to the obligation of rendering service at uniform and reasonable rates and without discrimination; but a telephone company may require its charges to be paid in advance, and may extend credit for such charges to such persons as it may deem desirable, without rendering itself liable to a charge of discrimination.

2. TELEPHONE COMPANIES—CHARGES—PAYMENT IN ADVANCE.—Telegraph and telephone companies may make rules and regulations which require that charges shall be paid for a reasonable time in advance by their subscribers, and may enforce such regulations by the refusal of service to persons who do not comply therewith.

3. TELEPHONE COMPANIES—LONG DISTANCE CALLS—PAYMENT.—It is a reasonable rule for a telephone company to require that the telephone where long distance calls originate shall be responsible for the payment of the charges therefor, and the company has the right to enforce such rule.

4. TELEPHONE COMPANIES—CHARGES—RULES—ABROGATION.—A telephone company had a rule making the subscriber responsible for the charges for long distance calls at whose 'phone the call originated. Held, the rule was not abrogated by the company upon a showing that upon a few occasions, subscribers were asked to O. K. calls originating at their 'phones.

Appeal from Craighead Circuit Court, Jonesboro District; *J. F. Gautney,* Judge; reversed.

STATEMENT BY THE COURT.

V. S. Sharp and H. D. White, partners as Sharp & White, instituted this action in the circuit court against the Southwestern Telegraph & Telephone Co. to recover penalties under our statute for alleged discrimination against them by the defendant in furnishing telephone service. The testimony taken at the trial was voluminous, but we think the issues raised by the appeal are simple and may be briefly stated as follows:

The defendant telephone company owns, maintains and operates a telephone exchange in the city of Jonesboro, Arkansas, and also operates a long distance line

from the city of Jonesboro to various towns in the State of Arkansas and elsewhere.

The plaintiffs are court stenographers and maintain an office in the city of Jonesboro. For several years they have been subscribers to the defendant's telephone service. Telephone subscribers pay a stated rental for service in the city of Jonesboro and extra compensation for long distance service. Under the rules and regulations of the company in regard to long distance messages each subscriber was charged and required to pay for all long distance messages originating from his telephone. The plaintiffs declined to pay for such messages originating in their office unless the messages were O. K'd. by them. The telephone company refused to credit them for service over the long distance telephone unless they would agree to pay for all such messages originating in their office, regardless of whether they were O. K'd. by plaintiffs. Hence this suit.

Other facts will be stated in the opinion. The jury returned a verdict for the plaintiffs for $175 and the defendant has appealed.

*Walter J. Terry,* for appellant; *A. P. Wozencraft,* of counsel.

The court properly held that the rule adopted by appellant was a reasonable one; but the appellees failed to bring themselves within the requirements of the law by complying or offering to comply with the reasonable rules and regulations of the appellant.

The extension of credit is a matter of grace, and a telephone company may select whom it shall credit. When appellees demanded long distance service on credit upon terms or conditions prescribed by themselves, that is, that they would only pay for such long distance calls originating at their telephone as they put in, or "O. K'd." they did not bring themselves within the requirements of the statute. We do not believe a telephone company ought to be penalized for refusing to furnish service and extend credit under such conditions. 81 Ark. 486; 100 Ark. 546; 2 Hutchinson on Common Carriers, (3 ed.),

§ 567; 51 Fed. 472; 61 Fed. 158; 88 Fed. 659; 86 Fed. 407; 130 S. W. 1050.

The right to recover a penalty must be dependent upon the right to demand the service; and only he who has paid or tendered the proper charges has a right to make such demand. *Supra;* 95 Ind. 29; 89 Ga. 777; 172 S. W. 433.

The evidence does not disclose any discrimination by the appellant in favor of any subscribers in like situation with appellees.

*Baker & Sloan,* for appellees.

1. The alleged rule has lost its existence through nonenforcement. Appellees were in a like situation with Lamb, Westbrooke, Applegate, and other parties who reverse calls or have charges transferred.

2. The rule is unreasonable. The reasonableness of a rule adopted by a public service corporation is a question for the court, and not for the jury. 73 Am. 205, 208.

The excuse offered by appellant for adopting such a rule is that the nature of its business is such that it is subject to a certain amount of fraud, and imposition. The company is not justified, in order to avoid this, in adopting a rule that will transfer the burden of such fraud and imposition from itself to the subscribers who are no more responsible for the situation than the company itself. 6 Wis. 539; 70 Am. Dec. 479. See, also, 122 Ala. 428, 25 So. 232; 137 O. St. 301, 41 Am. Rep. 500; 17 Wall. (U. S.) 357; 39 Ark. 148; 47 Ark. 97; 90 Ark. 138; 108 Ark. 115.

3. The compliance or offer to comply with the reasonable regulations of the company is a requirement contained in a proviso clause of the statute under which this suit was brought. The burden therefore was on the company throughout to prove the rule and its continued existence, and of showing that the appellees did not comply or offer to comply with the rule. 46 Ark. 306, 310; 63 Ark. 556, 559; 74 Ark. 302, 306; 83 Ark. 26, 29; 84 Ark. 332.

4. Appellant's argument with reference to the right to extend or deny credit is beside the issue. However, where parties are solvent and entitled to receive credit as much as the other patrons or subscribers of a public service company, it has been held that there may be discrimination as to credit. 147 Ia. 626, 125 N. W. 208, 31 L. R. A. (N. S.) 319. See, also, 42 S. W. 351.

*Walter J. Terry,* for appellant in reply; *A. P. Wozencraft,* of counsel.

Every witness called, testified that for a number of years he had known of the rule. The burden is on the corporation to show that it has established and promulgated a given rule; but when that is done the burden is on the party attacking it to show that it has been abrogated or abandoned. 115 Ark. 308.

Hart, J., (after stating the facts). This suit was brought under an act approved February 25, 1913. See Acts 1913, p. 346.

Section 1 of that act is as follows:

"Section 1. That section 7948 of Kirby's Digest shall be amended so as to read as follows:

"Section 7948. Every telephone company doing business in this State and engaged in a general telephone business shall supply all applicants for telephone connection and facilities without discrimination or partiality, within ten days after written demand therefor; provided, such applicants comply or offer to comply with the reasonable regulation of the company, and no such company shall impose any condition or restriction upon any such applicant that are not imposed impartially upon all persons or companies in like situations; nor shall such company discriminate against any individual or company engaged in lawful business, by requiring as condition for furnishing such facilities that they shall not be used in the business of the applicant, or otherwise, under a penalty of one hundred dollars, and five dollars per day for each day from the expiration of said notice until said demand is complied with or suit is instituted for penalty for failure to comply with said demand, for such dis-

crimination, after compliance or offer to comply with the reasonable regulations of such company and the time to furnish the same has elapsed, to be recovered by the applicant whose application is so neglected or refused. And any persons denied such telephone facilities shall also have the right to proceed by mandamus or other proper remedy to enforce the furnishing of same and the courts shall hear such applications either in vacation or in term time and make such temporary orders relative to the furnishing of such facilities as the facts may justify, and may enforce compliance therewith, until such orders are vacated by order of the court or the judge at chambers, or such suit is finally determined."

In the case of the *Southwestern Tel. & Tel. Co.* v. *Danaher,* 102 Ark. 547, we held that telephone companies have the right to make and enforce reasonable rules and regulations for the guidance of their subscribers and, in case the subscriber refuses to obey such regulations, may refuse to furnish telephone service without being guilty of discrimination. The statute under consideration there was practically the same as that in this case except in regard to the penalty prescribed for its violation.

(1) Being public service corporations, telephone companies take and hold their charters subject to the obligation of rendering service at uniform and reasonable rates and without discrimination. In recognition of the right of the telephone company to prescribe and enforce reasonable rules and regulations for the guidance of its subscribers, this court has held that a telephone company may require its charges to be paid in advance and may extend credit for such charges to such persons as it may deem desirable, without rendering itself liable to a charge of discrimination. *Yancey* v. *Batesville Telephone Co.,* 81 Ark. 486.

(2) It is the general rule that telegraph and telephone companies may make rules and regulations which require that charges shall be paid for a reasonable time in advance by their subscribers and may enforce such regulations by the refusal of service to persons who do

not comply therewith.   See case note to 34 Am. & Eng. Ann. Cas., at page 119.

(3)  In the case before us there was no refusal of credit to plaintiffs but under the rules and regulations adopted by the telephone company subscribers were required to pay for all long distance messages which originated from the subscriber's telephone.  The plaintiffs refused to pay for long distance messages originating from their office telephone unless these messages were from themselves or were O. K'd. by them.

We think the regulation adopted by the telephone company was a reasonable one, and that it had a right to enforce it.  The undisputed evidence shows that Jonesboro was a growing city; that there were 1,033 subscribers to the Jonesboro exchange and about 200 service stations in the country; that they were also connected with the Nettleton exchange which had about 200 telephones in town and country; that on account of the number of subscribers it was difficult for the operators to recognize the voices of the persons making long distance calls and in order to keep the telephone company from being imposed upon it was necessary that long distance calls be charged to the telephone from which they originated.  It was also shown that it was an easy matter for the subscriber to control the use of his phone.  Of course when the plaintiffs were in their office they could personally control it; and when they were out the telephone could be locked in the desk so that no one else could use it.  Hence we are of the opinion that the rule adopted by the telephone company was a reasonable one and that it had a right to enforce it.

It is contended by counsel for the plaintiffs that, however just and proper the rules were in themselves, they were so enforced as to constitute an unjust discrimination against them.  We do not think the evidence in the record shows that the rule sought to be enforced against the plaintiffs was ignored in regard to others in like situation.  In order to sustain this issue plaintiffs introduced two witnesses each of whom stated that at one time the company had charged his office with

a message which had not been authorized by him and that he refused to pay it. The evidence on the part of the telephone company tends to show that they uniformly attempted to enforce this rule and the mere fact that they did not enforce it on the two occasions in question does not amount to a discrimination against the plaintiffs.

(4) It was also shown by the plaintiffs by several other witnesses that frequently the long distance operators asked them to O. K. messages which came from their phones. The mere fact, however, that in some instances the long distance operators requested subscribers to O. K. messages was not sufficient to show that the rule under consideration had been abrogated or was not being enforced. The operators, at the times mentioned, may have had a suspicion that the subscriber was being imposed upon and did this for the purpose of protecting the subscriber. At any rate, we do not think the fact that the long distance operators would sometimes request that messages be O. K'd by subscribers is sufficient to show either an abrogation of the rule or its nonenforcement.

It was also shown by plaintiffs that the company frequently received calls which were "reversed." For instance, a person would be in Jonesboro and would desire to talk to his home or office in Paragould, Arkansas, and would request the long distance operator to call his office or home and charge the message to that end of the line. This testimony did not tend in any way to show that the rule in question had been abrogated or was not being enforced. The reversing of calls had nothing whatever to do with the rule in question. It was an entirely different rule and adopted for an entirely different purpose. The testimony on the part of the telephone company, which was not disputed, tended to show that this practice was permitted for the benefit of its subscribers; that when the operator became satisfied that the person talking was a subscriber to a phone in another town, he was permitted to have his message charged to his home phone; that the company so far

had not lost anything by adopting this rule; and that if as the exchange grew larger it should be found that this rule operated injuriously to the best interest of the company or should not be beneficial to the subscriber, it would be abrogated.

The record shows that the agents of the defendant tried in every way to induce the plaintiffs to accept service in accordance with its rules and regulations and never at any time refused to serve them until they had refused to comply with its rules and regulations in regard to the use of the long distance telephone. We think the undisputed testimony shows that the telephone company sought to enforce the rule under consideration against its subscribers alike and that it only restricted the use of the long distance telephone when requested to do so by its subscriber or when they refused to obey the regulations in regard thereto.

It follows that the court erred in not directing a verdict for the defendant and for that error the judgment will be reversed; and, inasmuch as the case appears to have been fully developed, the cause of action of plaintiffs will be here dismissed.