**AMERICAN TELEPHONE AND TELEGRAPH COMPANY**

v.

**JIFFY LUBE INTERNATIONAL, INC.**

Civ. No. K–90–2400.

United States District Court,
D. Maryland.

Feb. 18, 1993.

Pamela J. White, John M.G. Murphy and Ober, Kaler, Grimes & Shriver, Baltimore, MD, for plaintiff.

James K. Archibald, John T. Prisbe and Venable, Baetjer & Howard, Baltimore, MD, for defendant.

FRANK A. KAUFMAN, Senior District Judge.

This case involves the liability of defendant Jiffy Lube International, Inc. (Jiffy Lube), as a customer of plaintiff American Telephone and Telegraph Company (AT & T), for charges resulting from the unauthorized use of a long distance telephone line by a third party or parties. The latter gained access to the line through use of a remote access feature in Jiffy Lube's telephone system. AT & T seeks summary judgment against Jiffy Lube for payment for such service which AT & T provided to Jiffy Lube under AT & T Tariff FCC No. 1 (the Tariff). Jiffy Lube denies responsibility for those charges, asserting that they were caused by the fraudulent use of Jiffy Lube's long distance line by one or more third parties. Jiffy Lube, in a cross motion, asks this Court to enter summary

judgment for it with respect to such charges.

## I

The underlying facts in the within case are largely undisputed. AT & T provided Jiffy Lube with Long Distance Message Telecommunications Service (LDMTS), or long-distance telephone service, the terms and conditions for which are set forth in the Tariff, filed with the Federal Communications Commission (FCC) by AT & T.

In June, 1988, Jiffy Lube acquired a new telephone system for its corporate headquarters in Baltimore, Maryland. At that time, or soon thereafter, that telephone system included a remote access feature, by which an off-premises caller could dial an (unpublished) 800 number (provided by MCI Telecommunications Corp.) (MCI), access Jiffy Lube's private branch exchange (PBX),[1] and obtain a local dial tone. Once the local dial tone was received, the caller was required to input a special code to complete the call. Upon entering the code, the caller could then make long distance calls, international or domestic, on Jiffy Lube's long distance line, provided by AT & T. The code, together with the arrangement that the 800 number be unpublished, constituted Jiffy Lube's security system against unauthorized use of its remote access feature. The access code which Jiffy Lube chose was "LUBE." AT & T only provided Jiffy Lube with long distance service; it did not advise Jiffy Lube concerning its phone system or security measures, nor did it supply Jiffy Lube with the equipment for its phone system.

Jiffy Lube contends that within a few months of the installation of the remote access feature, an unauthorized caller or callers gained access to its long distance line through the remote access feature. Specifically, Jiffy Lube asserts that a "computer hacker" accessed Jiffy Lube's 800 number by use of a random-dialing device on his/her personal computer. Once the "hacker" accessed Jiffy Lube's PBX, he/she was able to break the four character "LUBE" code and make unlimited long distance calls on Jiffy Lube's long distance line provided by AT & T. Jiffy Lube also charges that the "computer hacker" published Jiffy Lube's 800 number and "LUBE" code on a computer "bulletin board" for use by other "hackers."

When Jiffy Lube learned of a large number of allegedly unauthorized international long distance calls made through its PBX, it totalled the charges for those calls and other allegedly unauthorized calls and refused to pay for them when billed by AT & T. Jiffy Lube deactivated its remote access feature. The disputed charges total $55,727.39, were due for payment on November 12, 1988, and have not been paid. AT & T filed the within suit on September 12, 1990.

AT & T argues that under the Tariff, a customer such as Jiffy Lube is responsible for calls originated at its numbers, whether authorized or not. Section 2.4.1.A of the Tariff provides in pertinent part:

The Customer is also responsible for the payment of bills for LDMTS. This includes payment for LDMTS calls or services:

—Originated at the Customer's number(s),

—Accepted at the Customer's number(s) (e.g., Collect Calls),

—Billed to the Customer's number via Third Number Billing if the Customer is found to be responsible for such call or service, the use of a Calling Card, or the use of a Company-assigned Special Billing Number, and

—Incurred at the specific request of the Customer.

AT & T Tariff FCC No. 1, § 2.4.1.A. Moreover, AT & T asserts that the case law going back to *Southwestern Tel. & Tel. Co. v. Sharp & White*, 118 Ark. 541, 177 S.W. 25 (1915) holds that a telephone call will be charged to the number from which it origi-

---

**1.** A PBX is a customer-provided private switching system used to facilitate the transmission of telephone calls to, from, and within a place of business. It is equipment added to the public telephone network by a customer such as Jiffy Lube, the use of which requires neither the knowledge nor approval of AT & T.

nates, whether authorized or not. Finally, AT & T contends that from a public policy point of view, it would be disastrous to hold that AT & T cannot collect for unauthorized calls, because so to do would create an unlimited expense for AT & T, which it would be powerless to control. That, says AT & T, is true because only customers are in the position to research and choose phone systems and security measures tailored to their needs, and any incentive on the part of customers to implement necessary security measures would be absent if Jiffy Lube's position in this case were to prevail.

By way of response and in support of its own motion for summary judgment, Jiffy Lube principally advances two arguments. First, Jiffy Lube contends that the Tariff distinguishes between fraudulent calls, on the one hand, and authorized calls, on the other hand, and that the unauthorized fraudulent calls in this case did not originate at Jiffy Lube's number, but at the "computer hacker's" number, so that, under the Tariff, Jiffy Lube is not responsible for the unauthorized calls. Second, Jiffy Lube argues that, even if the unauthorized calls originated, under the Tariff, at its number, AT & T's policy of holding customers absolutely liable for unauthorized calls is unjust and unreasonable, thereby violating 47 U.S.C. § 201(b) of the Communications Act.[2] Jiffy Lube bases that latter argument upon the contentions that 1) AT & T knew of the "computer hacker" fraud problem and did not warn Jiffy Lube about it; 2) AT & T, having control of the telephone network, is in a better position than its customers to implement measures to control fraud through remote access features, and 3) AT & T did not sufficiently assist Jiffy Lube in tracking the unauthorized caller(s).

## II

The principles to be applied by this Court in considering a motion for summary judgment under Rule 56, F.R.Civ.P., are well established. In *Phoenix Savings & Loan, Inc. v. Aetna Casualty Company*, 381 F.2d 245, 249 (4th Cir.1967), the Fourth Circuit summarized those principles as follows: "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Id.* Hence, the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670, 674 (4th Cir.1967).

The burden is on the party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). That burden can be met by the filing of affidavits, exhibits, depositions, discovery, and other appropriate Federal Civil Rule 56 documents. *Id.* The Fourth Circuit has stated that, with regard to motions for summary judgment, trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from going to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Nevertheless, "[t]he facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion." *Ballinger v. North Carolina Agricultural Extension Serv.*, 815 F.2d 1001, 1004–05 (4th Cir.1987) (Timbers, J.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985)). But a mere scintilla of evidence in favor of the

---

**2.** 47 U.S.C. § 201(b) provides in pertinent part: All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful[.]

non-moving party will not suffice to defeat a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

Rule 56(e), F.R.Civ.P., provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir.1988). The party opposing summary judgment must produce pretrial evidence countenanced by Rule 56(e) to establish all matters as to which it bears the burden of proof.

### III

■ In this case, there is, in the view of this Court, no genuine dispute as to any material fact, despite Jiffy Lube's claims to the contrary. Jiffy Lube asserts that there are at least three factual disputes, namely 1) what is the proper meaning and interpretation of the Tariff, 2) where does a long distance call "originate," and 3) whether AT & T's policy of imposing absolute liability upon the customer is just and reasonable. Those contentions may not prevail in the face of the record in this case. There is no genuine factual dispute as to the meaning of the Tariff, and specifically there is no question concerning the applicable meaning of the word "originated" as used in the Tariff. Indeed, the meaning of the Tariff is unambiguous. The Tariff squarely places responsibility upon a customer such as Jiffy Lube for calls, whether or not authorized, which "originated" at the customer's number. Herein, the calls at issue originated at Jiffy Lube's number, that is, at Jiffy Lube's PBX which was at Jiffy Lube's Baltimore office. Thus, in a case like this one, the word "originated" means that the calls in issue originated at

Jiffy Lube's number when, after the "computer hacker" dialed the MCI 800 number and after that hacker reached that number and dialed the code "LUBE," the hacker was thereby able to access the AT & T long distance line running out of Jiffy Lube's Baltimore office.

In arguing that the unauthorized calls originated not at Jiffy Lube's number, but at the unauthorized caller's number, Jiffy Lube ignores the fact that it created the vehicle and mechanism by which those long distance calls became possible. But for Jiffy Lube's installation of a telephone system with a remote access feature, the disputed calls could not have been made. *See American Telephone and Telegraph Co. v. Pacific Mutual Life Insurance Company*, C.D.Cal., Case No. CV 91–6793–IH (Oct. 30, 1992) (Hill, J.)[3] (determining that long distance calls originated at customer's number, the customer having installed the mechanism by which the calls became possible). Accordingly, this Court holds, as have the other four tribunals which have addressed the issue, namely the three other district courts whose opinions are cited in the body of this opinion and the FCC, that the word "originated" as used in the Tariff is unambiguous, and that the Tariff unambiguously places responsibility for calls, such as the calls at issue in the within case, whether or not authorized, squarely upon a customer such as Jiffy Lube.

In *Chartways Technologies, Inc. v. AT & T Communications*, 6 F.C.C.R. 2952 (1991), the Chief of the FCC's Common Carrier Bureau concluded that the plaintiff's claim that the Tariff was ambiguous was unfounded, and that calls "originate" at a customer's number when calls, authorized or not, are made from the customer's telephone system. The FCC's interpretation of the word "originated", being a word which it itself has used in the Tariff, should be accorded great deference by this Court. *See FCC v. WNCN Listeners Guild*, 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981) ("the construction of a statute by those charged with its execution

3. A copy of that opinion and copies of the other two unpublished opinions cited *infra* in the body of this opinion have been placed in the court file in this case.

should be followed unless there are compelling indications that it is wrong....") (quoting *Red Lion Broadcasting v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969)).

In *American Telephone and Telegraph Co. v. ITT Consumer Financial Corp.*, D.Minn. Case No. 3–89 Civ 374, 1990 WL 484340 (June 8, 1990) (Renner, J.) [4], Judge Renner granted summary judgment for AT & T for charges resulting from the unauthorized use of AT & T long distance services by way of the defendant's remote access feature. In *Industrial Leasing Corp. v. GTE Northwest, Inc., et al.*, D.Ore. Civil Case No. 92–64–RE (April 24, 1992),[5] Judge Redden granted defendant AT & T's motions to dismiss claims seeking declaratory judgment that the plaintiff was not liable for unauthorized calls. Judge Redden wrote that the Tariff unambiguously applied to the disputed calls made by way of plaintiff's remote access feature. And, in *Pacific Mutual*,[6] Judge Hill granted summary judgment for AT & T in a suit brought by AT & T concerning charges resulting from the unauthorized use of AT & T long distance services by way of the defendant's remote access feature. All three district courts decided that the word "originated" was unambiguous and that the Tariff placed responsibility for calls "originated" at the customer's numbers, whether authorized or not, upon the customer.[7]

Indeed, it has been well settled since the decision of the Supreme Court of Arkansas in *Southwestern Tel. & Tel. Co. v. Sharp & White*, 118 Ark. 541, 177 S.W. 25 (1915), that a customer such as Jiffy Lube is responsible for all calls which are made from its number, whether authorized or not. If someone had stolen a key to Jiffy Lube's Baltimore office and had utilized the AT & T long distance line from that office to make unauthorized long distance calls, the case law since *Southwestern*, as well as the Tariff, would place responsibility upon Jiffy Lube for paying for such calls. In the within case, the access to the AT & T long distance line in Jiffy Lube's principal office in Baltimore was not gained by such a criminal trespasser of the physical premises, but by a seemingly criminal "computer hacker." Jiffy Lube attempts to distinguish the two situations by contending, *inter alia*, that AT & T could not offer any protection to Jiffy Lube with regard to the criminal trespasser of the physical premises, but that, in terms of modern technology and knowledge of the same, AT & T is equipped to offer and could offer protection against "computer hackers", and further that AT & T is better equipped so to do than a customer such as Jiffy Lube. This Court would note that since Judge Harold Greene's Order in the AT & T antitrust case, *United States v. American Tel. and Tel. Co.*, 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom, Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983), AT & T would hardly seem to have the responsibility to offer such technological advice and warning to a customer such as Jiffy Lube, which lawfully opts to contract with MCI, a competitor of AT & T, in so far as the 800 number connection between outside callers and Jiffy Lube's PBX at its principal office is concerned. Such considerations aside, however, the Tariff makes no distinction between the criminal trespasser and the "computer hacker" in holding the customer responsi-

---

4. *See* note 3 *supra.*

5. *See* note 3 *supra.*

6. *See* note 3 *supra.*

7. *Chartways* is pending before the full FCC. The *ITT* case settled after Judge Renner's decision without appeal to the Eighth Circuit. Judge Hill's decision in *Pacific Mutual* is presently on appeal to the Ninth Circuit. Related to *Pacific Mutual* is *In re Petition of Pacific Mutual Life Insurance Company*, File No. ENF–91–07, which is pending before the FCC and which apparently addresses the same or similar issues as are presented in the within case. This Court originally stayed the within case pending the FCC's decision in the *Pacific Mutual* petition, but lifted that stay, even though the FCC had not yet made a decision with respect to the *Pacific Mutual* petition, because a decision by the FCC had not been forthcoming, and because Judge Hill, before whom was pending the substantive counterpart of the *Pacific Mutual* petition in *Pacific Mutual*, had decided to wait no longer and to proceed to the merits of the case before him.

ble for all calls originating at its numbers, whether authorized or not, and disregarding the manner in which unauthorized calls were made.

Jiffy Lube argues that, disregarding this Court's holding that the Tariff unambiguously places responsibility for the disputed calls on Jiffy Lube, Jiffy Lube is nevertheless entitled to have this Court deny AT & T's motion for summary judgment, because there is a material factual dispute as to whether AT & T's policy of imposing absolute liability upon the customer is just and reasonable under 47 U.S.C. § 201(b). Jiffy Lube stresses, in that regard, that AT & T's policy is unjust and unreasonable, because AT & T is in a better position to combat toll fraud than its customers, due to AT & T's greater knowledge of "hacker" fraud problems and AT & T's ability and power to detect, combat, and prevent the same.

In *Industrial Leasing Corp.*, Judge Redden did not foreclose, in a motion to dismiss context, the argument that AT & T violated 47 U.S.C. § 201(b) by failing to screen and protect against unauthorized use and by failing with sufficient promptness to investigate and to respond to the customer's request for assistance. Nor did Judge Redden foreclose the argument that AT & T was negligent in that context. Rather, Judge Redden permitted the plaintiff in *Industrial Leasing Corp.* to amend those claims more specifically to plead allegations of duties placed upon AT & T outside the tariffs. With all due deference to the District Court of Oregon, in this Court's view, such arguments are better put to the FCC, the federal agency charged with promulgating and interpreting tariffs such as the one at issue in the within case.

The FCC, not the district courts, should, as the agency with the expertise in the communications arena, weigh such considerations. Moreover, the FCC has seemingly already weighed those considerations in promulgating the Tariff and in its subsequent interpretations of the Tariff. Indeed, in *Chartways*, the Chief of the Common Carrier Bureau of the FCC concluded that under the facts of that case (which are similar to the facts in the within case in all relevant respects), he did not believe that AT & T's actions in requiring payment from its customer for charges associated with unauthorized calls made by way of the customer's PBX and remote access feature constituted unjust and unreasonable practices under 47 U.S.C. § 201(b), as such a conclusion would "... in effect, require AT & T to indemnify its customers for unauthorized calls and force it to absorb the costs associated with such calls." *Chartways*, 6 F.C.C.R. at 2954. As with the FCC's interpretation of the word "originated" as used in the Tariff, the FCC's weighing of the equities in the above indicated context should be accorded great deference by this Court.

Accordingly, in a separate Order of even date herewith, this Court will grant AT & T's motion for summary judgment and deny Jiffy Lube's motion for summary judgment, and will enter judgment for AT & T.

## IV

The parties have agreed that prejudgment interest is appropriate and that the rate of 8.15% per annum is a fair and reasonable prejudgment rate in this case. Accordingly, this Court will apply that rate.[8] The parties disagree, however, as to

---

**8.** It is noted that the parties may have chosen the rate of 8.15% as the rate authorized by the federal statutory postjudgment interest provisions applicable in this case. 28 U.S.C. § 1961(a) provides that postjudgment interest shall be calculated "at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment." However, the Seventh Circuit has indicated that

the market rate is the appropriate rate for prejudgment interest, not the rate allowed by the federal postjudgment statute. The postjudgment rate is too low because there is no default risk with Treasury bills, and therefore the postjudgment rate, based on the rate on fifty-two week Treasury bills at the last auction date of those bills before the entering of judgment, does not take into account the risk of default by the defendant. *See Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1332–33 (7th Cir.1992); *Gorenstein Enterprises v. Quality*

the date from which prejudgment interest should begin accruing and as to whether there should be simple or compound interest. AT & T contends that the prejudgment interest should run from November 12, 1988, the date when payment for the charges became due. Jiffy Lube argues that the prejudgment interest should run from September 12, 1990, the date AT & T filed its complaint in this case. AT & T asserts that the prejudgment interest should be compounded annually; Jiffy Lube contends that the prejudgment interest should be simple interest.

The prejudgment interest should begin running from November 12, 1988, the date payment for the charges became due, and should be calculated upon a compound interest basis for the same reasons that prejudgment interest should be awarded in the first instance. "Prejudgment interest is an element of complete compensation." *West Virginia v. United States*, 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639, 646 (1987). "Money today is not a full substitute for the same sum that should have been paid years ago. Prejudgment interest therefore is an ordinary part of any award under federal law." *Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1331 (7th Cir.1992). The award of prejudgment interest is necessary in this case for two reasons: 1) to put the parties in a position as near as possible to that which they would have occupied had Jiffy Lube paid the subject bill on time, and 2) to treat all customers under the Tariff impartially. The Communication Act expresses the policy that customers should be treated without preference.[9] *See* 47 U.S.C. § 202(a). Moreover, " '[w]aiver of prejudgment interest would confer on those who delay payment of the balance due an advantage over [those] who meet their obligations promptly.' " *Coliseum Cartage Co. v. Rubber-*

*maid Statesville*, 975 F.2d 1022, 1026 (4th Cir.1992), quoting *Consolidated Rail Corp. v. Certainteed Corp.*, 835 F.2d 474, 478 (3d Cir.1987). In this instance, waiver of prejudgment interest would give Jiffy Lube the benefit of the use of the money owed for the period prior to judgment, and thus would place Jiffy Lube in a better position, and AT & T in a worse position, than each would have been in had Jiffy Lube paid its bill when due. *See Coliseum Cartage*, 975 F.2d at 1026; *Southern Pac. Co. v. Miller Abattoir Co.*, 454 F.2d 357, 362 (3d Cir. 1972). Allowing Jiffy Lube the benefit of the use of the money owed would also favor Jiffy Lube as compared to other AT & T customers not having such a benefit, thereby violating the policy of impartiality expressed in the Communication Act. *See* 47 U.S.C. § 202(a). Therefore, the award of prejudgment interest is appropriate in this case.

■■■ In addition, for the same reasons, the prejudgment interest should run from November 12, 1988, the date when the disputed charges were due. Jiffy Lube argues that prejudgment interest should only run from September 12, 1990, the date when AT & T filed the within suit, since, claims Jiffy Lube, AT & T did not assist it in tracking the "computer hackers" and since at least 18 months of silence lapsed between conversations between Jiffy Lube and AT & T over responsibility for the calls and AT & T's filing of the complaint in the within case on September 12, 1990. Jiffy Lube asserts that under those circumstances, it is fair and equitable for prejudgment interest to commence from the time of AT & T's filing of suit. While the awarding of prejudgment interest, absent an applicable federal statute, is for a district court to determine using its own appropriate criteria, and while a district court

*Care–USA*, 874 F.2d 431, 436–37 (7th Cir.1989). That view would seem quite persuasive. However, in view of the parties' agreement upon the 8.15% rate, this Court will utilize it herein.

**9.** 47 U.S.C. § 202(a) provides:
It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in

connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

may consider the equities of a situation in making the said determination, *see West Virginia*, 479 U.S. at 308, 311 n. 3, 107 S.Ct. at 705, 706 n. 3, 93 L.Ed.2d at 645, 646 n. 3 (1987), this Court does not find Jiffy Lube's equitable arguments persuasive. Rather, because Jiffy Lube is responsible for the disputed calls and because Jiffy Lube should have paid for them in November, 1988, this Court concludes that AT & T was denied the use of the money due it since November 12, 1988. Therefore, the prejudgment interest shall run from November 12, 1988, the date payment for the charges became due. *See Chesapeake and Ohio Ry. Co. v. U.S. Steel Corp.*, 878 F.2d 686, 692 (3rd Cir.1989) (in shipper's suit against carriers for refund of freight payments, judgment rendered for shipper and prejudgment interest awarded from date claims accrued).

Likewise, for the same reasons, the interest should be compound interest. "... [C]ompound prejudgment interest is the norm in federal litigation." *Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d at 1332; *see also Gorenstein Enterprises v. Quality Care–USA*, 874 F.2d 431, 437 (7th Cir.1989); *Federal Barge Lines, Inc. v. Granite City Steel*, 664 F.Supp. 453, 454 (E.D.Mo.1987) (prejudgment interest award in admiralty case compounded annually, as compound and not simple interest more adequately compensated plaintiff for loss of use of money). Jiffy Lube's failure to pay the disputed charges denied AT & T the use of its money, "... including the opportunity to obtain interest on interest." *Gorenstein Enterprises*, 874 F.2d at 437. The prejudgment interest shall therefore be compounded.

## V

Accordingly, in a separate Order of even date herewith, this Court will grant AT & T's motion for summary judgment and deny Jiffy Lube's motion for summary judgment. Judgment for AT & T will be entered in the amount of $55,727.39, plus prejudgment interest at the rate of 8.15% per annum, compounded annually, to run

from November 12, 1988. Costs will be awarded to AT & T.