**AMERICAN TELEPHONE AND TELEGRAPH COMPANY,**
Plaintiff–Cross–Appellee,

v.

**The CITY OF NEW YORK and the New York City Corrections Department,** Defendants–Third–Party–Plaintiffs–Appellees–Cross–Appellants,

v.

**NEW YORK TELEPHONE COMPANY,**
Third–Party–Defendant–Appellant.

**Nos. 350, 514, Dockets 95–7486, 95–7488.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 22, 1995.

Decided April 26, 1996.

Robert J. Aurigema, New York City (B. Haven Walling, Jr., New York City, of counsel), for Plaintiff–Cross–Appellee.

John Hogrogian, Assistant Corporation Counsel, New York City (Paul A. Crotty, Corporation Counsel, New York City; Pamela Seider Dolgow, Diana M. Murray, New York City, of counsel), for Defendants and

Third–Party Plaintiffs–Appellees–Cross–Appellants.

Guy Struve, Davis, Polk & Wardwell, New York City (Richard H. Wagner, White Plains, New York; Michael J. Toolan, New York City, of counsel), for Third–Party Defendant–Appellant.

WALKER, JACOBS, and PARKER, Circuit Judges.

WALKER, Circuit Judge:

This action arises from the refusal of the City of New York and the New York City Department of Corrections (collectively "the City") to pay long-distance charges assessed by American Telephone and Telegraph Company ("AT & T") for telephone calls made from the City's prison facility on Rikers Island, and the refusal on the part of New York Telephone Company ("NYT") to indemnify the City. The City and NYT appeal from summary judgments entered in the United States District Court for the Southern District of New York (Kevin T. Duffy, *District Judge*) for AT & T against the City and for the City against NYT for indemnification in the amount of the judgment entered for AT & T.

## BACKGROUND

Plaintiff AT & T, an interstate common carrier that provides interstate and foreign telecommunications services, brought this action to recover $201,871.88 from the City for unpaid long-distance telephone charges attributable to calls made by prison inmates and administrative personnel over telephone lines installed in the correctional facility operated by the New York City Department of Corrections ("DOC") on Rikers Island. The City denied liability for the calls as unauthorized and impleaded NYT on the ground that NYT failed to provide services ordered by the City that would block long-distance and special toll calls.

The DOC has more than 120 accounts with NYT totalling 2,008 separate telephone lines. Pursuant to the DOC's internal regulations, prison facilities are required to allow prison inmates to make periodic telephone calls: at least one per day for pretrial detainees and two per week for sentenced prisoners. *See* Minimum Standards for New York City Correctional Facilities § 1–11. Inmates who call long distance must do so collect or at their own expense.

For all of the telephone lines accessible to inmates, the DOC ordered from NYT a special blocking service, known as "SO–1 service." SO–1 service has the following specific characteristics: 1) no incoming calls are permitted; 2) outgoing calls may be made only to area codes 212, 718, local 516, local 914, and local 201; 3) no access to the operator is permitted; 4) collect and third-party-billing calls are prohibited; and 5) no access is allowed to interactive/group area codes 411, 611, 911, 976, 555, 540, 770, 900, and 970. Some of the DOC's administrative lines are similarly limited except that incoming calls are permitted; other administrative lines are limited to service within the DOC.

For reasons not evident from the record, the blocking services ordered by the City were ineffective so that unauthorized long-distance phone calls were made on DOC phones for the three years from late 1990 to late 1993. These unauthorized long-distance calls, which were carried by AT & T, were made on 307 telephone lines. Twenty-nine of the DOC's 120 accounts with NYT were affected; twenty-six of these accounts related to inmate telephone lines, and the other three related to telephone lines accessible to DOC personnel but not inmates.

NYT provides billing and collection services for AT & T long-distance charges. On approximately seventy-five occasions during the relevant three-year period, NYT billed the City for AT & T long-distance calls. The City disputed these charges and did not pay them. During this period, the City made regular complaints to NYT about the failure of the ordered blocking services and the unauthorized long-distance calls. With these bills unpaid, NYT referred them to AT & T for further collection pursuant to an agreement between the two companies. Between August 27, 1991 and February 5, 1992, AT & T issued five bills to the City that demanded payment for long-distance calls totalling $201,871.88. The City continued to refuse to

pay these bills on the ground that the calls were unauthorized and should have been prevented by NYT pursuant to their blocking agreement. This lawsuit followed.

The City responded to AT & T's complaint by denying liability and, in turn, filed a third-party complaint against NYT. AT & T moved for summary judgment against the City. The City cross-moved for summary judgment against AT & T or, in the alternative, moved for summary judgment against NYT. The district court granted summary judgment both for AT & T against the City and for the City against NYT. Both the City and NYT have appealed.

## DISCUSSION

As a preliminary matter, the district court had jurisdiction over AT & T's claims for unpaid bills in connection with the provision of interstate telephone service by carriers regulated under the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 151–612, pursuant to 28 U.S.C. § 1337. *See Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486, 490 (2d Cir.1968). We note, however, that our court is in disagreement with the United States Court of Appeals for the Fifth Circuit, which has held that federal district courts lack subject matter jurisdiction to hear actions such as the one between the City and AT & T. *See MCI Telecommunications Corp. v. Credit Builders of Am., Inc.*, 980 F.2d 1021 (5th Cir.), *vacated*, 508 U.S. 957, 113 S.Ct. 2925, 124 L.Ed.2d 676, *prior opinion reinstated*, 2 F.3d 103 (5th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 472, 126 L.Ed.2d 424 (1993). The district court exercised supplemental jurisdiction over the City–NYT state law dispute pursuant to 28 U.S.C. § 1367(a). Our jurisdiction over the entire appeal derives from 28 U.S.C. § 1291.

■ The district court disposed of the claims of AT & T and the City by summary judgment. It is well-settled that in ruling on a motion for summary judgment, a

judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the

[non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Furthermore, a district judge must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. *See Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995). When reviewing the grant of a summary judgment motion, we must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

### I. *Is the City a "Customer" of AT & T?*

At the outset, we are faced with the question of whether the district court, in granting summary judgment to AT & T, correctly concluded that no material fact question existed from which a jury could find that the City was not AT & T's "customer." Much turns upon this question, for if the City is not AT & T's "customer," the City has no obligation to pay AT & T.

■ The legal relationship between AT & T and its customers is defined by the tariffs, which consist of the terms and conditions of the common carrier's service and rates, that AT & T is required to file and maintain with the Federal Communications Commission ("FCC") under the FCA. 47 U.S.C. § 203(a). These federal tariffs have the force of law and are not simply contractual. *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1095 (3d Cir.1995); *MCI Telecommunications Corp. v. Garden State Inv. Corp.*, 981 F.2d 385, 387 (8th Cir. 1992). Relevant to this case is AT & T Tariff No. 1, which governs AT & T's provision of Long Distance Message Telecommunications Service ("LDMTS"), *i.e.*, long-distance telephone service. This tariff provides:

The Customer is responsible for placing any necessary orders and complying with tariff regulations for LDMTS and for as-

suring that its Users comply with tariff regulations. The Customer is also responsible for the payment of bills for LDMTS. This includes payment for LDMTS calls or services:

    —Originated at the Customer's number(s)

    —Accepted at the Customer's number(s) (e.g., Collect Calls),

    —Billed to the Customer's number via Third Number Billing if the Customer is found to be responsible for such call or service, the use of a Calling Card, or the use of a Company-assigned Special Billing Number, and

    —Incurred at the specific request of the Customer.

AT & T Tariff No. 1 § 2.4.1.A.

The City concedes that the above definition of responsibility for long-distance billing is "wide" and includes liability for unauthorized long-distance calls. *See American Tel. & Tel. Co. v. Jiffy Lube Int'l, Inc.,* 813 F.Supp. 1164, 1168 (D.Md.1993); *Industrial Leasing Corp. v. GTE Northwest, Inc.,* 818 F.Supp. 1372, 1374 (D.Or.1992); *Chartways Technologies, Inc. v. AT & T Communications,* 6 F.C.C.R. 2952, at ¶ 12 (1991). However, as we stated earlier, the parties dispute whether the City is a "customer" of AT & T, although they do agree on many of the facts pertinent to the "customer" determination. There is no dispute that long-distance calls were placed or accepted through DOC telephone lines at Rikers Island; that no access code was required for the calls; that the calls were connected by AT & T; that the calls resulted from the failure of NYT's blocking service; and that the unauthorized long-distance calls were made in the amount of $201,-871.88. In fact, AT & T and the City each argues for summary judgment in its favor on the ground that there are no disputes of material fact.

Under AT & T Tariff No. 1 § 2.10, the term "customer" is defined as "the person or legal entity which orders LDMTS (either directly or through an agent) and is responsible for payment of tariffed charges for services furnished to that Customer." The district court concluded that the City was a "customer" of AT & T because the blocking service ordered by the City allowed calls to be made to the "local 201" area code in New Jersey:

> The blocking service ordered by the City ... allowed calls to be made to the "local 201" area code. The 201 area code is located in the State of New Jersey and such calls to New Jersey must be placed by a long distance company such as AT & T. If a long distance company is required for these calls, then the City can be said to have "ordered" long distance service, albeit limited by its blocking agreements with NYT.

This conclusion is unsupported by the record; indeed, the parties agree that the blocking service, which included "local 201" service, had no long-distance component. Apparently, part of New Jersey proximate to New York City is connected to New York via local lines.

■ In arguing to uphold the City's "customer" status, AT & T relies on the FCC's determination that a party can "order" long-distance service, and thus become a "customer," in one of two ways: (1) by "affirmatively" ordering the service by presubscribing to AT & T LDMTS or (2) by constructively ordering AT & T LDMTS and creating an "inadvertent carrier-customer relationship" by failing to take "reasonable steps" to control unauthorized charging of AT & T long-distance calls to the party's telephone number. *United Artists Payphone Corp. v. New York Tel. Co.,* 8 F.C.C.R. 5563, at ¶ 13 (1993); *see AT & T Corp. v. Community Health Group,* Civ. No. 94–1526–K, slip op. at 4 (S.D.Cal. Oct. 18, 1995). The FCC's interpretation of tariff provisions is afforded great deference. *See FCC v. WNCN Listeners Guild,* 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981). AT & T contends that both methods are satisfied in this case. The City, however, denies that it ever "ordered" long-distance service on the lines at issue, either affirmatively or constructively, and that it therefore is not a "customer" within the meaning of the tariff. We examine each of these contentions in turn.

### A. Did the City Presubscribe to AT & T Long–Distance Service?

AT & T argues that the judgment of the district court should be affirmed because the City had designated AT & T as its long-distance carrier for its telephone service from Rikers Island. A person or entity may become a customer by affirmatively "ordering," or "presubscribing," to LDMTS. Although the parties have not included a discussion of the concept of "presubscription" in their submissions, the procedure by which a customer "presubscribes" to LDMTS was explained by Judge Leisure in *American Tel. & Tel. Co. v. United Artists Payphone Corp.*, No. 90 Civ. 3881, 1990 WL 200653, at *3 (S.D.N.Y. Dec. 3, 1990). A "primary interexchange carrier" ("PIC")—such as AT & T, MCI, or U.S. Sprint—may be designated for telephone numbers. The selection of a PIC with respect to a particular telephone line is known as "presubscribing" to that carrier for that line. Once a PIC is designated, a caller who dials "1 + area code + number" or "0 + area code + number" is automatically routed to the interexchange carrier designated. It is also possible to choose not to presubscribe to any carrier for a line ("PIC None" line). In such a case, a caller must dial "10XXX + 1 + area code + number," where XXX is the interexchange carrier's access code.

In support of its contention that the City presubscribed to AT & T long-distance service, AT & T primarily relies on the June 1993 affidavit of John Corso, an Operations Manager for NYT and former Market Administrator for the New York City DOC accounts. Corso attests that "historically" the City had AT & T as its designated carrier and that, during his tenure as Operations Manager, AT & T was the long-distance carrier for "most" of the inmate and administrative lines. He further asserts that although the City subsequently switched its designated long-distance carrier from AT & T to U.S. Sprint for its accounts city-wide, "the DOC's designated carrier for long-distance service on inmate lines at Rikers Island is still AT & T." This conclusory statement is insufficient to demonstrate that the City affirmatively ordered AT & T LDMTS. Corso fails to specify the lines to which he refers, and we are unable to conclude whether they are the same as the particular inmate and administrative lines from which the unauthorized calls were made.

AT & T also contends that its designation as long-distance carrier is demonstrated by the fact that no access code was necessary for these calls to be made, *i.e.*, none of the calls were made on a "10XXX" dial around basis designating access to another carrier. That the long-distance calls in question were carried by AT & T and not by another long-distance carrier such as MCI or U.S. Sprint indeed suggests that the City had presubscribed to AT & T LDMTS for these lines, but it is not conclusive on the point. The evidence of record does not preclude the possibility, for example, that the City did not affirmatively select AT & T LDMTS but rather that AT & T was a default carrier or, alternatively, that it was not possible to have local service independent of long-distance capability, necessitating a long-distance carrier default coupled with a blocking service. Although we only hypothesize here, these alternative theories are reasonable in light of the fact that the City flatly denies having "ordered" long-distance service. The City claims that it "did not take any affirmative action to establish a carrier-customer relationship with AT & T as to the lines in question," a statement that is buttressed by the fact that the City plainly did not wish long-distance calls to be placed over these lines. Accordingly, despite the fact that there is some evidence in the record to suggest presubscription by the City, this evidence does not compel the conclusion as a matter of law that the City presubscribed to AT & T. In the face of the City's denial of presubscription, the evidence is insufficient to support the grant of summary judgment in favor of AT & T.

### B. Did the City Constructively Order AT & T LDMTS?

Presubscription is not the only way to "order" service from a carrier, and thereby to become a customer of that carrier. *United Artists*, 8 F.C.C.R. 5563, at ¶ 13. As an alternative basis for finding that the City is a

"customer" under AT & T Tariff No. 1, AT & T argues that the City constructively ordered long-distance service because the unauthorized calls were made from the Rikers Island phone lines. In opposition, the City maintains that it took all reasonable measures to prevent unauthorized access and that it therefore should not be held absolutely liable.

In this case, the City cannot be held to have constructively ordered service from AT & T unless it failed to take "reasonable steps" to secure its phones from long-distance calling. If the City had control over the use of its equipment but did not take appropriate steps to prevent unauthorized access from its phones to the long-distance network, it may reasonably be held to have constructively ordered service from AT & T and may be held to have established an inadvertent carrier-customer relationship. *Id.*

The City undeniably took some steps to prevent unauthorized access both by ordering complete blocking services for the lines and by generally restricting prison inmates from long-distance access. Whether these steps were reasonably sufficient to prevent unauthorized access requires further inquiry, however. For example, despite restrictions in the number and duration of the calls allowed, the billing records suggest that these restrictions were evaded in some instances. Thus, a material issue of fact exists with respect to whether the City fulfilled its duty to take reasonable steps to prevent unauthorized calls. On remand, the district court should consider, *inter alia*, the degree of the City's control over the use of its equipment and lines and whether the City took reasonable and cost-effective measures to control the unauthorized charging of AT & T LDMTS calls.

The above discussion addresses calls placed on telephones accessible to inmates. It is undisputed that a minority of the unauthorized calls were placed over DOC administrative lines which were used only by DOC personnel. These non-prisoner calls fare no better under the summary judgment standard. Under AT & T Tariff No. 1 § 2.10, the term "customer" includes a person or legal entity that orders LDMTS through an

agent. Therefore, if DOC personnel were agents of the City, acting within the scope of their employment, the making of calls from these phones may constitute a constructive ordering of AT & T LDMTS. The fact, however, that the City had a blocking service agreement with NYT to prevent outgoing long-distance calls over these telephone lines suggests that the placement of such calls was beyond the scope of employment of the DOC personnel who used the lines. At the least, there exists a material issue of fact as to whether the DOC personnel are agents of the City for the purposes of the disputed telephone calls. For this reason, the district court's judgment is also vacated with respect to the unauthorized long-distance calls made on lines exclusively used by DOC personnel.

## II. *Is NYT Guilty of Gross Negligence or Willful Misconduct so as to be Liable for Damages?*

The district court also granted summary judgment in favor of the City for indemnification from NYT on the basis that NYT was grossly negligent in the performance of its duties in connection with its "blocking agreements" with the City. In light of our disposition of the customer issue with respect to both inmate and DOC personnel calls above, we necessarily also vacate summary judgment as against NYT. However, because the issue of NYT's liability may be revisited by the district court on remand, we briefly discuss the district court's reasoning as to NYT's liability.

The City maintains that NYT is liable as a matter of law under the relevant local tariffs for gross negligence or willful misconduct, on the ground that "NYT failed to provide the requested service on numerous telephone lines over a prolonged period of time despite its own awareness of the problem and repeated notification by" the DOC. NYT's blocking service is provided pursuant to local tariffs filed with the New York State Public Service Commission, New York Public Service Law § 92, which supersede all common law remedies regarding the rates, terms, and conditions of regulated services. *Van Dussen–Storto Motor Inn, Inc. v. Rochester Tel. Corp.*, 42 A.D.2d 400, 403, 348 N.Y.S.2d 404,

407 (4th Dep't 1973), *aff'd,* 34 N.Y.2d 904, 359 N.Y.S.2d 286, 316 N.E.2d 719 (1974).

The City's claims against NYT are governed by Tariff P.S.C. No. 900. Subsection D.2.f states:

Apart from the interruption allowance stated above, no liability shall attach to [NYT] for damages arising from errors, mistakes, omissions, interruptions, or delays of [NYT], its agents, servants or employees, in the course of establishing, furnishing, rearranging, moving, terminating, or changing the service or facilities ... in the absence of gross negligence or wilful misconduct.

NYT's liability for service failures, including failures of the blocking service, is limited to errors, mistakes, or omissions resulting from gross negligence or willful misconduct.

Despite NYT's contentions that it promptly investigated and acted to remedy problems with the blocking service, the district court granted summary judgment to the City on the ground that NYT "kept [its] eyes closed" to the repeated failure of its blocking services. The district court stated that all of the calls in question were placed over equipment owned and operated by NYT and that, therefore, NYT had immediate notice that inmates were making unauthorized long-distance calls.

■■■■ Under Tariff P.S.C. No. 900, the relevant inquiry is whether the negligence of NYT rose to the level of gross negligence. Gross negligence is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.,* 81 N.Y.2d 821, 823–24, 595 N.Y.S.2d 381, 383, 611 N.E.2d 282, 284 (1993). Although in some limited instances gross negligence may be found as a matter of law, *see, e.g., In re Hubbell's Will,* 302 N.Y. 246, 258–59, 97 N.E.2d 888 (1951), the circumstances of this case are insufficient to support such a finding at the summary judgment stage.

The district court's holding misapplies the applicable gross negligence standard by focusing not on whether NYT's errors, mistakes, or omissions constituted a gross failure

to exercise due care but on the fact that NYT caused a harm to the City that was gross in magnitude. Taking note only of the fact of a series of service breakdowns, the district court effectively employed a strict liability analysis: The calls were placed over NYT's facilities, the calls were supposed to be blocked, the calls were not blocked, and, therefore, NYT is liable.

■■■■ Notwithstanding that NYT concedes that 121 of DOC's phone lines "had blocking problems for any length of time" and that "it took longer than usual to correct these problems," a mistake or a series of mistakes alone, without a showing of recklessness, is insufficient for a finding of gross negligence. *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 555, 583 N.Y.S.2d 957, 963–64, 593 N.E.2d 1365, 1371–72 (1992). Thus, even if (as the district court found) NYT had immediate notice, the fact that each problem was not promptly corrected, standing alone, would not suffice to show gross negligence.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court for AT & T and against the City and remand this matter for further proceedings in accordance with this opinion.